The FIDELITY STATE BANK, a corporation, Appellant,

v.

CENTRAL SURETY AND INSURANCE CORPORATION, a corporation, Appellee.

No. 5162.

United States Court of Appeals Tenth Circuit.

Nov. 29, 1955.

Daniel R. Hopkins, Garden City, Kan. (W. F. Lilleston, George Stallwitz, Ralph M. Hope, Richard W. Stavely, Wichita, Kan., Logan N. Green, Ray H. Calihan, Garden City, Kan., on the brief), for appellant.

Lawrence Weigand, Wichita, Kan., and Martin J. Purcell, Kansas City, Mo. (Claude I. DePew, Wichita, Kan., and R. L. Hecker, Kansas City, Mo., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This case is one of many to reach this court as a result of the bankruptcy of the Garden Grain & Seed Company of Garden City, Kansas. Central Surety and Insurance Corporation brought this action to obtain a determination of its

liability under various bonds which it executed covering the faithful performance of the bankrupt as a public warehouseman under the provisions of Chapter 34 of the General Statutes of Kansas 1949. The determinative facts as they relate to the Fidelity State Bank are not in dispute, and this appeal is from a summary judgment entered in favor of the surety company.

On May 3, 1951, the bank loaned the bankrupt $45,000 on its note secured by three local public warehouse receipts, each covering nine thousand bushels of wheat. The receipts were identical in form to those considered by this court in Central States Corporation v. Luther, 10 Cir., 215 F.2d 38, 42. They recited that the warehouseman had received the wheat in store subject to the order of the bank, upon payment of charges and surrender of the receipts. They also contained a statement that the warehouseman was not the owner of the grain. The bank had never delivered any grain to the warehouse for storage. The receipts were not registered and the word "registered" was never stamped upon them with the official registration stamp. They were neither the kind of receipts issued to depositors of grain, nor receipts for grain stored in the warehouse and owned by the warehouseman.

The grain company was adjudicated a bankrupt on January 17, 1952. The bank filed its claim in the bankruptcy proceedings, attached its note and the warehouse receipts, and contended that it was entitled to delivery of the wheat represented by the receipts. The Referee found that the receipts were not registered; that the warehouseman did not have any grain owned by it in storage on the date the receipts were issued or at any time subsequent thereto; and that the bank made no deposit of grain in storage. The Referee held that the receipts were not in compliance with the Kansas Grain and Forage Act and were void and of no effect. He allowed the claim as a common claim. No appeal was taken from this adjudication. It is conceded here that the receipts are void and of no effect.

In substance, the bank's contention here is that the grain company, as a public warehouseman, violated its duties as a public warehouseman in issuing the receipts, and thereby failed to faithfully perform all of its duties as a public warehouseman in violation of the condition of the bond.[1] The bank contends that it had no actual notice of these failures and therefore was entitled to the protection of the statutory bonds.

The grain company was a licensed public warehouseman and had posted the bond required by Kansas G.S.1949, (Section 34–229). It was authorized by statute to issue two kinds of receipts; one, for grain stored by others (Section 34–239), and the other, for grain owned by it, (Section 34–240). Under the provisions of Section 34–248, every public warehouseman issuing negotiable receipts upon receipt of grain is required to file them with the Kansas Registrar of Warehouse Receipts for registration by noon of the following business day or such time as the chief inspector shall designate. The chief inspector is authorized to permit the issuance of unregistered receipts for grain which the warehouseman does not own. No such permission was given in this case. The

---

1. In its brief the bank enumerated violations of the grain company of its duties as a public warehouseman as follows:

"1. It issued receipts without registration, or in the alternative failed to secure permission from the Chief Inspector for the issuance of nonregistered receipts. (G.S.1949, 34–248).

"2. It issued receipts knowing that the grain for which such receipts were issued had not been actually received by it nor under its actual control at the time of issuing the receipts. (G.S.1949, 34–290).

"3. It issued receipts containing false statements in that the receipts showed receipt of grain from Garden Grain & Seed Co., Inc. (G.S.1949, 34–291).

"4. It failed to deliver the grain covered by such receipts upon proper demand therefor (G.S.1949, 34–250)."

warehouseman must in all cases register every negotiable receipt issued for grain which he owns, either solely or in common with others. It is the duty of the registrar, appointed by the chief inspector, to register the receipts in a book kept for that purpose, and to stamp the word "registered" on each receipt with the date of registration, and affix his signature. As clearly pointed out in the Central States case, these receipts did not meet the requirements of the Kansas Statute. We held there that the holder of similar receipts could not reclaim the wheat described in the receipts; that he had no lien on grain in storage; and that he could not participate in a fund created by the sale of stored grain other than as a common creditor.[2]

■■ The bank deposited no grain in the elevator for storage, and the receipts which it accepted could relate only to grain which the bankrupt represented that it owned. A warehouseman may under Section 34–240 pledge his grain through the medium of warehouse receipts. He may do this, however, only by a strict compliance with the statute. He must strictly follow the requirements of the statute as to registration of the receipts. One who accepts receipts from the warehouseman which have been issued contrary to the statutory requirements, may not be heard to say that he had no notice that there was no compliance with the provisions of the Act. If the receipt is for grain purportedly owned by the warehouseman, the person who accepts it is bound to know that it must recite that the warehouseman is the owner, either solely or jointly or in common with others, and he must be held to know that the receipt which he accepts is registered or unregistered. In Kipp v. Goffe & Carkener, Inc., 144 Kan. 95, 58 P.2d 102, 109, 108 A.L.R. 918, the Kansas Supreme Court considered the same Act. In that case, the owner of grain was dealing with an unlicensed warehouseman. In speaking of the pre-

2. In the Central States case, supra, we said:

"The claimant did not deliver any grain to the bankrupt for storage. No physical deposit of grain was made and none was ever intended by the parties. The receipts were never registered and the word 'registered' was never stamped upon them with the official registration stamp. The claimant knew that no grain was deposited with the bankrupt for storage, and it knew that the receipts did not indicate on their face that they had been registered. The receipts were not conventional bona fide vouchers issued to a depositor of grain. Neither were they receipts for grain belonging to the bankrupt and then presently stored in its warehouse. It seems clear that the transactions between the claimant and the bankrupt, which included as an integrated part thereof the issuance and delivery of the receipts, did not conform to the statutory exactions of the state in respect to the issuance of warehouse receipts. Our attention has not been called to any case decided by the Supreme Court of Kansas involving the validity of warehouse receipts issued under similar or fairly comparable circumstances to those present here. But in Kipp v. Goffe & Carkener, 144 Kan. 95, 58 P.2d 102, 108 A.L.R. 918, it was held that one dealing with a warehouseman who had not been licensed under the act was bound to know that the warehouseman had no right, power, or authority as a public warehouseman to receive grain for storage or transfer for the public; and that one storing grain with such a non-licensed warehouseman and taking receipts therefor could not invoke the protection of the act. If one who accepts from a warehouseman not licensed under the act receipts for grain stored in his warehouse cannot invoke the protective provisions of the act, it must follow by appropriate analogy that where one, in disregard of the act, obtains warehouse receipts from a licensed public warehouseman without depositing with such warehouseman any grain for storage and without the receipts being registered in the manner specified in the act cannot be heard to urge with success that the receipts were validly issued under the act and therefore constitute sustainable basis for the assertion in bankruptcy of a right of reclamation, an equitable lien, or preferred claim. First Camden National Bank & Trust Co. v. J. R. Watkins Co., 3 Cir., 122 F.2d 826."

sumption of knowledge of the state statutes, the court said:

"The evidence discloses Dillon knew he had never complied with the law, and that he was not doing business as a local public warehouseman. Plaintiff, dealing with Dillon, was bound also to know that fact, for the reason that he is bound generally to know the law of the state, and furthermore, had it been a public warehouse, the license therefor would have been posted in a conspicuous place in the office room of the elevator. Hence, both of the parties knew that Dillon had no right, power, or authority as a public warehouseman to receive grain for storage or transfer for the public." See also Shugar v. Antrim, 177 Kan. 70, 276 P.2d 372; Rose v. Board of Directors of School Dist. No. 94, 162 Kan. 720, 179 P.2d 181; Fidelity Savings State Bank v. Grimes, 156 Kan. 55, 131 P.2d 894; Tomb v. Bardo, 153 Kan. 766, 114 P.2d 320.

The Central States case is in accord with this statement. The only difference between this case and the Central States case is the nature of the fund in which the parties seek to participate. The fund in the Central States case came from the sale of grain belonging to depositors, and here, it is the proceeds of the statutory bonds.

In Kansas, "The inspection, grading, and storage of grain for the public long has been recognized to be of such importance as to be affected with the public interest, and subject to reasonable statutory regulations by state legislation." Kipp v. Goffe & Carkener, Inc., supra. The provisions of the Act "represent the considered public policy of the state in respect to the matters falling within their compass". Central States Corporation v. Luther, supra.

The purpose of the Act is to provide a means whereby the public users of warehouse facilities may be protected from loss. If there is compliance with the statute, state officers designated to supervise the enforcement of the Act can check the sales and transfers made by warehousemen and properly protect the public. If transactions like those in this case are upheld, the holders of invalid receipts may make a claim against the bondsman of the warehouseman, and the protection sought to be given those who store grain in warehouses or who purchase valid warehouse receipts, could be destroyed. The examining officials could not effectively inspect and balance the amount of grain held by the warehouseman against outstanding warehouse receipts or other evidences of title to grain issued by the warehouseman. It seems to us that the statutory provisions for obtaining a warehouseman's license and governing transactions relating to grain in storage, either as bailee or owner, were designed to prevent such transactions as occurred between the bank and the grain company and any one participating in such transactions is not entitled to the protection of the Act.

Affirmed.