**CENTRAL STATES CORPORATION,**
Appellant,

v.

**TRINITY UNIVERSAL INSURANCE COMPANY,** Appellee.

No. 5403.

United States Court of Appeals
Tenth Circuit.

Oct. 6, 1956.

Samuel Morgan, Chicago, Ill. (Kahrs & Nelson, Wichita, Kan., on the brief), for appellant.

Gerrit H. Wormhoudt, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky and Donald R. Newkirk, Wichita, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

On August 4, 1951, Trinity Universal Insurance Company[1] issued a State of

1. Hereinafter called the Insurance Company.

Kansas Grain Public Warehouse Bond in the principal amount of $130,000, covering the operation by the Garden Grain and Seed Company [2] of grain elevators as public warehouses at Garden City, Kansas Air Base and Pierceville, Kansas. On October 30, 1951, the Insurance Company issued a like bond in the principal amount of $5,000, covering the operation by the Seed Company of an elevator as a public warehouse, at Ingalls, Kansas.

The Insurance Company brought an action of interpleader against Central States Corporation [3] and others who asserted claims against it under its bonds, asking a determination of its liabilities under the bonds to such claimants.

Central filed an answer in which it sought recovery on the $130,000 bond, on account of certain unregistered warehouse receipts issued to it by the Seed Company. In its answer Central alleged that on November 29, 1951, it purchased from the Seed Company 50,000 bushels of No. 2 milo at $2.35 cwt. and paid therefor the sum of $65,800 and that as a part of the same transaction the Seed Company on the same day issued to it ten unregistered public warehouse receipts, numbered 164 to 173, inclusive, in the form prescribed and authorized by the law of Kansas. Central further alleged that on December 15, 1951, it purchased from the Seed Company 50,000 bushels of No. 2 yellow milo at $2.46 cwt. and paid therefor the sum of $68,800, and that as a part of such transaction the Seed Company on the same day issued to Central ten unregistered public warehouse receipts, numbered 179 to 188, inclusive, in the form provided by the law of Kansas.

Such unregistered receipts recited that the Grain Company had received in storage from Central a designated number of bushels of milo, subject to the order of Central. Each of the receipts also contained the following recital:

"The undersigned warehouseman is not the owner of the grain covered by this receipt, either solely, jointly or in common with others: * * *."

Central further alleged that the amount paid by it to the Seed Company for milo represented by such receipts, after giving full credit for milo delivered to it by the Seed Company, is $220,875.71 and sought recovery on the $130,000 bond for the full amount thereof.

The trial court granted a summary judgment in favor of the Insurance Company. Central has appealed.

At the hearing on the motion for summary judgment Central filed an affidavit of defense. It attached to such affidavit a transcript of the testimony of A. P. Emrie, Chief Grain Inspector of the State of Kansas, given in the examination of the Seed Company, Bankrupt, in the bankruptcy proceedings, which showed that the Grain Inspector had authorized the Seed Company to issue unregistered receipts and furnished the forms for such receipts in triplicate, one copy to be delivered to the person taking the receipt, one copy to be retained by the Seed Company and one copy to be forwarded to the Grain Inspection Department for the State of Kansas. The receipts were sent to Central with sight draft attached and Central received the receipts when it honored the sight draft.

In its affidavit of defense Central averred:

"D. That in each of the transactions between Central * * * and * * * Seed Company * * * the latter used the moneys paid by Central * * * to purchase milo; that in each instance the said milo so purchased was deposited in the warehouses of * * * Seed Company * * *; that in each instance the said deposit was purported to be made for and on behalf of Central * * *; that in each instance warehouse receipts were issued reciting that the grain so deposited had been 'received in store' 'from Central States Corp.'; that each of the ware-

2. Hereinafter called the Seed Company.

3. Hereinafter called Central.

house receipts so issued to Central \* \* \* was on an official form prescribed and printed by the State of Kansas, each purported to be negotiable, and each bore the caption, 'Uniform Unregistered Bailment Local Public Warehouse Receipt;' that as Central \* \* \* required grain for its distilling operations, it would draw upon the deposits of milo evidenced by its said warehouse receipts; that storage charges were paid by Central \* \* \* on all grain not so withdrawn by it; that at no time was Central \* \* \* aware that milo had not been deposited for and on its behalf by \* \* \* Seed Company, in the amounts specified in the said warehouse receipts; that in all its transactions with \* \* \* Seed Company, Central \* \* \* acted in good faith and without knowledge of any dereliction on the part of \* \* \* Seed Company."

Thus, it will be seen that in its answer Central alleged that it purchased milo from the Seed Company and received unregistered receipts therefor, while in its affidavit of defense Central averred that it furnished money to the Seed Company, with which the Seed Company was thereafter to purchase milo, while the receipts were issued at the time the money was furnished.

The Seed Company did not have milo in storage for which it issued receipts to Central and after it received the money from Central it did not thereafter purchase milo and place it in the warehouse to the credit of Central.

Section 34–248, General Statutes of Kansas Annotated, 1949, provides in part:

"*Registration of receipts; issuance of unregistered receipts, when.* It shall be the duty of each and every public warehouseman issuing negotiable receipts upon receipt of any grain, to issue or cause to be issued a receipt thereof, in compliance with this act, and to by twelve o'clock the following business day, or such time that the chief inspector shall designate, file with the registrar of warehouse receipts designated by the chief inspector, a report as hereinafter provided, and showing the amount of grain received, the name of the owner thereof, and the numbers of receipts therefor issued, accompanied by the warehouse receipts for registration: *Provided,* That at the option of the chief inspector, a public warehouseman may issue unregistered negotiable receipts for grain of which the warehouseman is not the owner, either solely, jointly or in common with others: *And provided further,* That a public warehouseman must, in all cases, register every negotiable receipt issued by him for grain of which the warehouseman is the owner, either solely, jointly or in common with others. \* \* \* "

Section 34–246, General Statutes of Kansas Annotated, 1949, provides in part:

" \* \* \* That no warehouse receipt shall be issued except upon actual delivery of grain into store in the warehouse from which it purports to be issued. \* \* \* "

Section 34–290, General Statutes of Kansas Annotated, 1949, makes it a criminal offense for any warehouseman to issue or aid in the issuance of a warehouse receipt, knowing that the grain for which such receipt is issued has not been actually received by such warehouseman or is not under his actual control at the time of the issuance of such receipt.

Section 34–291, General Statutes of Kansas Annotated, 1949, makes it a criminal offense for a warehouseman or any officer, agent or servant of a warehouseman fraudulently to issue a receipt for grain, knowing that it contains a false statement.

Central did not deliver any grain to the Seed Company at the time it received the unregistered receipts and honored the sight drafts attached thereto, or at any other time; the Seed Company issued unregistered receipts to Central for

grain which it did not actually have in storage; and Central knew those facts at the time it received the receipts and honored the sight drafts.

Central States Corporation v. Luther, 10 Cir., 215 F.2d 38, was an action brought by Central for the possession of grain and funds in the possession of the trustee in bankruptcy for the Grain Company, predicated on the receipts involved in the instant case.

In its opinion the court said, at page 42:

"* * * It will be observed with poignant significance that the pertinent language contained in the act in respect to receipts not being issued unless the grain has been actually deposited with the warehouseman and is under his control, as well as the language in respect to receipts issued for grain of which the warehouseman is the owner being registered, is not directory or permissive. Such provisions in the act are unequivocal, mandatory, and imperative. And they represent the considered public policy of the state in respect to the matters falling within their compass."

The court held that since Central did not deliver any grain to the bankrupt for storage and no physical deposit of grain was ever made, the receipts were invalid.

Fidelity State Bank v. Central Surety & Ins. Corp., 10 Cir., 228 F.2d 654, was an action brought by the Insurance Corporation for determination of its liability under warehouseman's bonds covering the operations of the Seed Company as a public warehouseman under the provisions of Chapter 34 of the General Statutes of Kansas Annotated, 1949. In that case the Fidelity Bank loaned the Seed Company $45,000, evidenced by its note for that amount, secured by three public warehouse receipts, each covering 9,000 bushels of wheat. The receipts recited that the warehouseman had received the wheat in storage, subject to the order of the bank, upon payment of

charges and surrender of the receipts. They contained a statement that the warehouseman was not the owner of the grain. The bank had never delivered any grain to the warehouseman. The receipts were not the kind of receipts authorized to be issued for grain stored in the warehouse and owned by the warehouseman. The bank contended that the Seed Company, as a public warehouseman, violated its duty as a public warehouseman in issuing the receipts and thereby failed to faithfully perform all of its duties as a public warehouseman, in violation of the condition of the bond.

In affirming the judgment below, which denied recovery, the court, in its opinion said, at pages 656, 657:

"The bank deposited no grain in the elevator for storage, and the receipts which it accepted could relate only to grain which the bankrupt represented that it owned. A warehouseman may under Section 34-240 pledge his grain through the medium of warehouse receipts. He may do this, however, only by a strict compliance with the statute. He must strictly follow the requirements of the statute as to registration of the receipts. One who accepts receipts from the warehouseman which have been issued contrary to the statutory requirements, may not be heard to say that he had no notice that there was no compliance with the provisions of the Act. If the receipt is for grain purportedly owned by the warehouseman, the person who accepts it is bound to know that it must recite that the warehouseman is the owner, either solely or jointly or in common with others, and he must be held to know that the receipt which he accepts is registered or unregistered. * * *

* * * * * *

"* * * If transactions like those in this case are upheld, the holders of invalid receipts may make a claim against the bondsman of the warehouseman, and the protection sought to be given those who store

grain in warehouses or purchase valid warehouse receipts, could be destroyed. The examining officials could not effectively inspect and balance the amount of grain held by the warehouseman against outstanding warehouse receipts or other evidences of title to grain issued by the warehouseman. It seems to us that the statutory provisions for obtaining a warehouseman's license and governing transactions relating to grain in storage, either as bailee or owner, were designed to prevent such transactions as occurred between the bank and the grain company and any one participating in such transactions is not entitled to the protection of the Act."

Here, Central was bound to know that the unregistered receipts had been issued to it for grain that was not in the warehouse and that they were, therefore, issued contrary to law and were invalid.

We conclude that Central was not entitled to recover on the bond and, accordingly, the judgment is affirmed.