324 F.2d 830
 CENTRAL NATIONAL BANK OF MATTOON, Plaintiff,
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff-Appellee,
v.
KANSAS STATE BANK et al., Third-Party Defendants-Appellants.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff-Appellee,
v.
The CHARLESTON NATIONAL BANK, Third-Party Defendant-Appellant.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff-Appellee,
v.
William D. BURNSIDE, Third-Party Defendant-Appellant.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff-Appellee,
v.
Lulu W. JUNTGEN, Third-Party Defendant-Appellant.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff-Appellant,
v.
Eugene CROXEN, Third-Party Defendant-Appellee.
 Nos. 14032-14036.
 United States Court of Appeals Seventh Circuit.
 October 31, 1963.
 
 Walter W. Ross, Jr., Theodore J. Tsoumas, Richard J. Kissel, Chicago, Ill., Earl R. Anderson Paris, Ill., for defendants-appellants. Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., Massey, Anderson & Gibson, Paris, Ill., of counsel.
 John P. Hampton, Roger D. Doten, Chicago, Ill., Wayne S. Jones, Paris, Ill., Edward P. McNeela, Chicago, Ill., for third party plaintiff-appellee. Dent, Hampton & Doten, Chicago, Ill., of counsel.
 Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 Appellants in Nos. 14032-14035 have appealed from summary judgments entered against them in their actions against the Fidelity and Deposit Company of Maryland on its statutory Public Grain Warehouseman's Bond.[1] Fidelity has taken a "precautionary appeal" in No. 14036 from an adverse judgment in Croxen's action.
 
 
 2
 Appellants loaned money to C. R. Acord, Fidelity's principal, a licensed public grain warehouseman in Illinois, and took his notes secured by warehouse receipts. All of the receipts in question were issued by Acord as "Licensed Warehouseman." Those held by appellants were issued to Acord as owner of the grain covered therein, and the one held by Croxen showed that it covered grain deposited by Croxen. After Acord's death his estate had no assets for payment of the notes and there was no grain which the receipts purported to cover. The holders of the receipts turned to Fidelity which refused to pay. One commenced this action on the bond and Fidelity brought the others into the suit by filing a third party action in the nature of a bill of interpleader. Counterclaims were filed by the third party defendants.
 
 
 3
 Fidelity moved for a judgment on the pleadings on the grounds that the receipts were given in transactions not covered by the bond; and that the receipts were illegal on their faces and the holders charged with knowledge of that illegality. Croxen moved for a summary judgment. The judgments subject of these appeals followed.
 
 
 Nos. 14032, 14033, 14034 and 14035
 
 
 4
 The question is whether the District Court correctly decided as a matter of law that the warehouse receipts, issued by Acord and upon which the actions of appellants are based, were illegal, and that the holders of such receipts do not fall within the protection of Acord's statutory bond.
 
 
 5
 Appellants first argue that so long as Acord's grain was not commingled with the grain of other depositors he could lawfully issue the receipts.[2]
 
 
 6
 In Hannah v. People, 198 Ill. 77, 64 N.E. 776 (1902), the court declared unconstitutional an amendment to the Warehouse Act purporting to permit the operator of a public warehouse to mix his own grain with that of his customers and to issue receipts representing the mass. The court rejected an argument that the holding violated the Fourteenth Amendment of the United States Constitution, stating there was no question raised of the right of a public warehouseman to store his own grain in vacant places in his warehouse not occupied or needed for storage of grain of customers. Appellants rely upon that statement as a "major principle" showing that the Supreme Court of Illinois was not prohibiting Acord from issuing receipts for his grain stored in vacant places in his warehouse.
 
 
 7
 Accepting, without agreeing to, appellant's premise that Acord could have lawfully issued receipts for such grain stored in vacant places in his warehouse, the receipts would have had to state on their faces that the grain was Acord's and was stored in a separate bin.[3] The receipts here did not so state. Consequently they were illegal under § 214.11.
 
 
 8
 Fidelity's liability was limited by the condition of the statutory warehouseman's bond: "on the faithful performance of duties as an operator and the full and unreserved compliance with the laws of this State * * * so that the depositors in such warehouse and holders of receipts for such grain may receive the benefit of such bond * * *."[4] We think the appellants, as "holders" of receipts which are illegal on their faces, were charged with knowledge of the illegality,[5] and are not "holders of receipts for such grain" within the meaning of the statute or bond. The clear intent of the bond is to insure the integrity of the negotiable character of warehouse receipts by protecting "holders" who derive their title through "depositors" against fraudulent conduct in violation of the Act, subsequent to the issuance of the receipts, which would adversely affect the underlying value of the receipts.
 
 
 9
 The warehouseman's bond is not intended to protect "holders" who take from an "operator" receipts which are illegal on their faces. If it were otherwise, to quote Judge Pickett of the Tenth Circuit, "the holders of invalid receipts may make a claim against the bondsman of the warehouseman, and the protection sought to be given those who store grain in warehouses or who purchase valid warehouse receipts, could be destroyed."[6] Judge Pickett was speaking of Kansas law, but his statement is equally applicable to Illinois.[7] We agree, therefore, with the District Court that the appellants do not "fall within the class to receive the benefit of the bond."[8]
 
 
 10
 The summary judgments were proper. The District Court used reasoning different from ours for its judgments. But we are not bound by its reasoning.
 
 
 No. 14036
 
 
 11
 In this "precautionary appeal" Fidelity concedes that Croxen has a valid claim on the bond and states the appeal was merely "for the purpose of preserving jurisdiction over Croxen's claim" so that he would not receive more than his pro rata share of the bond if the appellants in Nos. 14032-14035 were successful. Fidelity further concedes that the judgment in favor of Croxen should be affirmed in full if we affirmed judgment against the appellants. The judgment is therefore affirmed.
 
 
 12
 Judgments in the several appeals are affirmed.
 
 
 
 Notes:
 
 
 [1]
 Required of public grain warehousemen by ILL.REV.STAT. ch. 114, § 214.8 (1961)
 
 
 [2]
 We note that there is no evidence as to whether there ever was any grain covered by the receipts. However, since this is an appeal from a summary judgment we must not draw inferences unfavorable to the party being moved against. For purposes of our decision we will assume Acord did have his own grain in the warehouse at the time he issued these receipts, and that this grain was not commingled with customers' grain
 
 
 [3]
 ILL.REV.STAT. ch. 114, § 214.11 (1961), provides in pertinent part: "The receipt issued for grain in such separate bin shall state on its face that it is stored in a separate bin with identity preserved."
 
 
 [4]
 ILL.REV.STAT. ch. 114, § 214.8 (1961)
 
 
 [5]
 Fidelity State Bank v. Central Surety & Ins. Corp., 228 F.2d 654 (10th Cir. 1955)
 
 
 [6]
 Id, 228 F.2d at 657
 
 
 [7]
 ILL.CONST. art. XIII, § 6, S.H.A.:
 "It shall be the duty of the general assembly to pass all necessary laws to prevent the issue of false and fraudulent warehouse receipts, and to give full effect to this article of the constitution, which shall be liberally construed so as to protect producers and shippers. * * *"
 
 
 [8]
 The same conclusion was reached under Kansas law in Central States Corp. v. Trinity Universal Ins. Corp., 237 F.2d 875 (10th Cir.1956), cert. denied, 352 U.S. 1003, 77 S.Ct. 561, 1 L.Ed.2d 548 (1957), and Fidelity State Bank v. Central Surety & Ins. Corp., 228 F.2d 654 (10th Cir. 1955). The illegality of the receipts in those cases was for different reasons from that in the case at bar, but we think the principle of decision is the same: holders of warehouse receipts which are illegal and which are known by such holders to be illegal, cannot use these receipts as the basis of a cause of action against the surety of the warehouseman who issued the receipts