298 P.2d 976

Owen JENSEN, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Defendant-Respondent.

No. 8373.

Supreme Court of Idaho.

June 27, 1956.

A. A. Merrill, Idaho Falls, for appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for respondent.

BAKER, District Judge.

During the year 1951 Hale Hubbard owned and operated a small elevator or warehouse in Ashton for the care of non-perishable agricultural crops such as grain and peas. He was engaged in the business of purchasing grains, but it appears probable he had not furnished bond as required by Title 22, Chapter 13, required of certain classes of dealers in farm produce. His facility was small and would not hold more than three or four days delivery of wheat during the heavy harvest season. Wheat delivered at his elevator was dumped into a pit and elevated from it into a railroad car, if one was then being loaded with grain of like quality. Wheat was retained in the elevator only until shipped.

Hubbard had obtained license to operate as a warehouseman under the provisions of the Bonded Warehouse Law, Title 69, Chapter 2 of the Idaho Code. The defendant in this case furnished bond in the penal sum of $4,000 as required by Section 69-208, Idaho Code, "to secure the faithful performance" of Hubbard's obligations as a warehouseman. While there was testimony that Hubbard contemplated warehousing dry peas only, it seems there was no limitation or such provision in his license.

During the harvest season of 1951, the plaintiff delivered at the Hubbard warehouse 42,485 pounds of wheat. Whether included in this weight was certain wheat, fit only for feed and for which Hubbard later paid, is in some doubt, but in view of the conclusions we have reached this conflict and question are of no importance. No warehouse receipts were issued as provided by the Uniform Warehouse Receipts

Law, Title 69, Chapter 1, Idaho Code, of one who accepts property as a warehouseman. The plaintiff received nothing other than scale or weight slips.

On November 11, 1953, plaintiff commenced this suit against the defendant alone to recover the value of the grain so delivered. In his original complaint he alleged he had sold the grain to Hubbard; that he had recovered judgment, to which detailed reference will later be made, against Hubbard for the value. The complaint was subsequently amended so as to allege a temporary storage of the grain in the Hubbard warehouse instead of sale to Hubbard. In its answer defendant pleaded, among other affirmative defenses, the entry of the judgment in the suit against Hubbard based upon the sale of the wheat to him. The trial court sustained the defendant's motion for judgment on the pleadings and dismissed the action. Upon appeal the judgment was reversed, 76 Idaho 351, 283 P.2d 185, for the reason that the affirmative allegations, deemed denied by the plaintiff, were merely unsupported allegations and that the substantial question was whether the grain was sold to Hubbard or delivered to him for storage.

Following remittitur the case was retried. The plaintiff positively testified that the grain was delivered to Hubbard for storage only but that no warehouse receipts were delivered; that he had unsuccessfully endeavored to obtain the grain or its value from Hubbard. The latter testified as positively and as directly that the grain was purchased by him and had been shipped out upon or shortly after delivery. The defendant offered in evidence the judgment roll in the case commenced by the plaintiff to recover personal judgment against Hubbard consisting of the complaint, summons with proof of service, default and judgment. In the complaint in that action prosecuted against Hubbard alone, the plaintiff alleges, among other things: "That during the month of September, 1951, the plaintiff sold and delivered to the defendant 42,485 pounds of white wheat for which the defendant (Hubbard) agreed to pay the full price of $1,020.07." The complaint was verified by plaintiff's counsel. Hubbard defaulted and on October 30, 1953, the district judge upon proof submitted signed judgment in favor of the plaintiff as prayed.

At the close of plaintiff's case, defendant made its motion for nonsuit, renewed in form of motion for directed verdict, at the close of all of the evidence upon the ground, among others, that the case against Hubbard estopped the plaintiff from contending the delivery was other than of sale. Both motions were denied. The trial court, upon its own motion, submitted to the jury for answer by it not only form of general verdict but also special interrogatory in these words: "Was the grain in question in this action delivered to the Hale

Hubbard Elevator, Bonded, as a sale or was it delivered for storage?" The answer of the jury was "storage". However, the general verdict of the jury was in favor of the defendant. The plaintiff then moved for judgment in accordance with the special verdict notwithstanding the general verdict and appeals from order denying his motion and from the judgment entered on the general verdict.

■■ The Bonded Warehouse Law and the Uniform Warehouse Receipts Law make it clear that a warehouseman by the act of delivery does not acquire any right to the goods except to possession. A warehouseman is merely a bailee of the goods stored, 56 Am.Jur. p. 331, and, except as to fungible goods, is under the obligation of delivering the specific goods stored to the owner or other person entitled to possession.

■ A surety on a warehouseman's bond is not liable for the defaults of a purchaser who fails to pay or of a factor who fails to account, State ex rel. Cawrse v. American Surety Co., 148 Or. 1, 35 P.2d 487; Republic Underwriters v. Tillamook Bay Fish Co., 133 Tex. 141, 126 S.W.2d 641; Note, 121 A.L.R. 1157.

■■ If Hubbard was a purchaser of the wheat, title passed to him not later than at the time of delivery and the obligation to pay the price then or at a time agreed upon attached. Hubbard could not be a purchaser of the grain under obligation to pay the price and at the same time be a warehouseman under obligation to redeliver the grain.

On the same transaction the plaintiff prosecuted to final judgment his suit against Hubbard to recover upon the theory of sale with title passing to and vesting in the purchaser. In this proceeding he sues to recover from the surety on the theory that Hubbard was not the purchaser of the grain but was a warehouseman or bailee of it with ownership remaining in him. In this suit he attempts to repudiate the theory of sale expressly pleaded in the suit against Hubbard but at the same time to retain the benefit of that judgment by pleading it as establishing the value of the grain and fixing the liability of the defendant although not a party to that suit. A copy of the judgment is attached to the complaint in this action and the following allegation is made concerning it:

"That the said Hale Hubbard failed, neglected and refused to pay for said wheat, or any part thereof, and on June 25, 1953 the plaintiff entered suit in the above-entitled court against him and on October 9, 1953 obtained a judgment, which has not been paid, for the sum of $1,020.07, together with interest in the amount of $124.78, plus $22.20 costs, totaling $1,167.05, a copy of said judgment is attached hereto and made a part hereof, as fully

as though the same was set out at length herein."

The prayer of the complaint in the present suit in part is "For $1,167.05 as alleged in said judgment * * *."

 The positions of the plaintiff are directly conflicting and cannot be reconciled. The record in plaintiff's suit against Hubbard estops him from contending or asserting that Hubbard was a warehouseman. Especially apt is the statement of Justice Keeton in Loomis v. Church, 76 Idaho 87, 277 P.2d 561, 565:

"It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter." (Citing many cases.)

Defendant's motion for nonsuit or for directed verdict should have been sustained. The same result was accomplished by judgment in favor of the defendant on the general verdict.

The judgment and order appealed from are affirmed with costs to respondent.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.