HOOD, Judge.
This is an action instituted by Carl H. Loewer against Frank J. Duplechin,. d/b/a Duplechin Bonded Warehouse, and the New Amsterdam Casualty Company, surety on Duplechin’s warehouseman’s bond, for a sum of money alleged to be due plaintiff as the purchase price of rice which plaintiff had delivered to defendant’s warehouse and which thereafter was allegedly sold. Both of the defendants answered denying liability. New Amsterdam Casualty Company also filed a third party complaint against Duplechin in which it seeks to recover from Duplechin any sum which it may be condemned to pay plaintiff. After trial, judg *125 ment was rendered by the trial court in favor of plaintiff and against both defendants, in solido, for the full amount claimed. Judgment further was rendered in favor of New Amsterdam Casualty Company, as third party plaintiff, against Duplechin for the same amount. The defendant New Amsterdam has appealed.
This suit was consolidated for the purposes of trial and appeal with the cases of Bieber v. New Amsterdam Casualty Company et al., 161 So.2d 136, and Bieber v. New Amsterdam Casualty Company et al., 161 So.2d 136. These suits, although filed by different plaintiffs, were instituted against the same defendants who are named in the instant suit, and the actions are based on facts similar to those which exist here. A third party action was filed by New Amsterdam in each of these suits and the same legal and factual issues are presented in them as are presented in this case. In each of the above-styled suits judgment was rendered in favor of plaintiff and against defendants, in solido, and judgment was further rendered for the same amount in favor of the third party plaintiff and against Duplechin. The defendant, New Amsterdam Casualty Company, has appealed from the judgments rendered in all of these consolidated cases.
The evidence shows that during the year 1957 defendant Duplechin owned and operated a public warehouse in Eunice, Louisiana, known as Duplechin Bonded Warehouse, which warehouse was licensed and operated as a bonded warehouse under the provisions of Title 54, Chapter 4, of the Louisiana Revised Statutes. In compliance with the requirements of LSA-R.S. 54:250, Duplechin furnished and filed with the State Warehouse Commission a surety bond, with Duplechin as principal and New Amsterdam Casualty Company as surety, which bond provides that:
“NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall honestly conduct said business, faithfully perform all duties and obligations to all parties doing business with said Principal as a warehouseman, and shall pay all monies or accounts owed by it to the State Warehouse Commission, any person, firm, exchange, corporation or association whatsoever arising out of its conduct of such business as a warehouseman in farm produce, and otherwise conducts its said business in accordance with the provisions of the Louisiana Revised Statutes of 1950, Title 54, Chapter 4 (Act 218 of 1940), and the regulations issued thereunder then this obligation shall be null and void, otherwise to remain in full force and effect.”
In September, 1957, Duplechin entered' into a separate oral agreement with each, of the plaintiffs in these consolidated cases to the effect that he would guarantee each of them a certain amount per barrel for the rice raised by them, which rice was. then still growing in the field but was to. be delivered to the defendant’s warehouse immediately after being harvested, and that payment would be made for that rice at the agreed price as and when it was sold by Duplechin. Under this agreement, Loewer was to receive $7.25 per barrel for his rice, and the plaintiffs in the other two suits-were to receive $7.50 per barrel for theirs. Pursuant to these agreements, each of these plaintiffs delivered his rice to Du-plechin’s warehouse after it was harvested', and the rice was then dried and stored in that warehouse. Later, and pursuant to the same agreement, Duplechin sold' and delivered the rice, but he has never paid plaintiffs the amounts which he had “guaranteed” them for it, nor has he accounted to them for any of the proceeds- of the sale. Plaintiffs thereupon instituted' these-suits against Duplechin and his surety for the balance due on the agreed price for such rice.
Plaintiffs contend “that they delivered', their rice to Duplechin under an agreement constituting Duplechin their agent or broker, as a warehouseman, to store their rice,. *126 hold it for sale to farmers for seed rice, on behalf of plaintiffs, at a price to assure plaintiffs at least the equivalent of $7.50 ($7.25 in one case) per barrel, green weight.” They take the position that the failure of Duplechin to pay to them the agreed price for their rice from the proceeds of the sale constitutes a violation of his duty as a warehouseman, and accordingly, that the surety on Duplechin’s warehouseman bond is liable to plaintiffs for the loss which each sustained. Defendants, on the other hand, contend that Duplechin purchased this rice from plaintiffs on open account, while it was a growing crop, that he was the owner of the rice when it was delivered to his warehouse, that plaintiffs did not place the rice in his warehouse “for storage,” and that he did not perform any services for plaintiffs “as a warehouseman.”
The trial judge concluded “that Duplechin was, insofar as his dealings with the three plaintiffs are concerned, operating as a warehouseman and that, consequently, plaintiff should recover judgment against Duplechin and the New Amsterdam Casualty Company.
On this appeal New Amsterdam contends that the trial judge erred in holding that this transaction occurred during the course and scope of Duplechin’s duties “as a warehouseman.” It argues that the agreement between plaintiff and Duplechin constituted either (1) a credit sale of rice to Duplechin, or (2) the delivery of rice to Duplechin under a mandate to him for the purpose of sale. Since the surety bond which New Amsterdam issued to Duple-■chin is conditioned upon the latter’s “doing business * * * as a warehouseman” ■and since LSA-R.S. 54:58 defines a warehouseman as “a person lawfully engaged in the business of storing goods for profit,” New Amsterdam contends that its surety undertaking does not cover Duplechin’s individual obligation, either as a purchaser of the rice or as an agent or factor to sell it for plaintiff.
Duplechin testified that at the time he entered into these agreements with plaintiffs he understood that he was purchasing their rice, as a growing crop, for a stated price per barrel, which purchase price was to be paid to plaintiffs as and when Duplechin sold the rice. He understood that title to the rice passed to him “when it was delivered, when it was brought into my warehouse * * *, as soon as it was weighed, when I gave them” a weight certificate; and that while the rice was in his warehouse prior to being sold plaintiffs were without authority to sell it themselves. Duplechin further testified that he purchased plaintiffs’ rice as an individual and not as a warehouseman, that no storage charges were ever sought or collected by him for the storage of this rice, and that although the rice was actually stored in his warehouse for a period of time before being sold, it was stored for Duplechin’s personal use and not for plaintiffs.
Each of the plaintiffs understood the oral agreement to be that he retained ownership of his rice while it was stored in the Duplechin warehouse, that he could have removed or sold the rice at any time, and that he had merely designated Duple-chin as his agent to sell the rice for not less than a stipulated price per barrel. According to the testimony of each plaintiff, he understood that Duplechin had no authority to sell the rice for less than the agreed price per barrel without plaintiff’s permission, unless Duplechin wanted to make up the difference, that plaintiff was not obligated to pay any storage, drying or sacking charges on the rice under any circumstances, but that Duplechin was entitled to retain all that portion of the proceeds of the sale of such rice which exceeded the agreed price per barrel.
None of the plaintiffs were ever issued any “bonded warehouse receipts” on the rice involved in these suits. At the time the rice was delivered to the warehouse each of said plaintiffs received “weight certificates” which show the weight and variety of the *127 rice received. Most of the weight certificates relating to rice raiséd by plaintiff in the instant suit were issued in the names of “C. H. Loewer and Duplechin,” but all of the other such certificates were issued in the names of the plaintiffs only. Duplechin admits that he has sold the rice involved in these suits, that the agreed price has not been paid to plaintiffs, and that he is indebted, personally, to plaintiffs for the amounts claimed by them in these suits.
Since Duplechin has not appealed, the judgment in favor of plaintiffs and against him is final. The sole question presented here, therefore, is whether New Amsterdam, as the surety under the warehouseman’s surety bond furnished by Duplechin, is also liable to plaintiffs for the amounts claimed.
We think the evidence establishes, as contended by plaintiffs in each of these suits, that plaintiffs delivered rice to the Duplechin warehouse with the understanding and agreement that Duplechin was to sell the rice for them at a stipulated price per barrel, and he was to pay to plaintiffs that agreed price per barrel immediately after the rice was sold. Under these agreements, therefore, Duplechin was appointed as the agent, broker or factor for each of said plaintiffs in disposing of this rice.
This seems to he the first instance in which a Louisiana appellate court has been called upon to determine whether the buying and selling of grain by a public warehouseman, or his serving as an agent or factor in selling grain which is stored in his warehouse, are acts which constitute a part of his duties and obligations to the patrons of his “warehouse,” as that term is used in Title 54 of the Louisiana Revised Statutes, so as to make the surety on his warehouseman’s bond liable for failure of the warehouseman to pay for the grain purchased or to remit the proceeds of the sale to the original owner of the grain.
LSA-R.S. 54:58 defines “warehouseman” as follows:
“(11) ‘Warehouseman’ means a person lawfully engaged in the business of storing goods for profit.”
In Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85, our Supreme Court said:
“ * * * The storing of goods on property for purposes of sale and distribution does not constitute the operation of a warehouse. It is only where a person is engaged in the business of storing goods for profit that he can he classed as a ‘warehouseman’ and the structure in which the goods are stored as a ‘warehouse.’ * * * ”
At 121 A.L.R., page 1157, Anno. — Public Warehouseman’s Bond, we find the following statement:
“The sale of merchandise and the collection and remittance of the proceeds thereof not coming within the duties of a public warehouseman as defined in the Uniform Warehouse Receipts Act, it has’been held that a surety on the bond of the warehouseman conditioned that he will faithfully perform the duties required of him by law is not liable for the failure of the warehouseman to pay over or account for the proceeds of such sales or collections made by him under an agreement with the owner in states where such statute is in force. (Citations omitted). (The section of the Uniform Warehouse Receipts Act above referred to as defining the duties of a warehouseman is § 58, which defines ‘warehouseman’ as ‘a person lawfully engaged in the business of storing goods for profit.’)”
Volume 56 of American Jurisprudence, at Anno. — Warehouses, contains the following statements:
“§ 120. Obligations of Sureties. — A warehouseman’s bond is generally given to secure the faithful performance of the warehouseman’s obligations under the law of the state, and a surety’s *128 liability on a bond given in compliance with a statute to qualify the principal as a public warehouseman, and executed by the surety in the light of statutes in force defining the duties of a public warehouseman, cannot be extended beyond the duties so embodied in the statutes. A statute defining a warehouseman as a person lawfully engaged in the storing of goods for profit has been held to confine the surety’s obligation on a statutory bond of a public warehouseman to the storing of goods for profit, not withstanding the warehouseman undertakes additional obligations.
“§ 121. For Default Relative to Distribution of Proceeds of Sale of ■Goods. — On the ground that the sale of ■merchandise and the collection and remittance of the proceeds thereof do not come within the duties of a public warehouseman, as defined by statute, a default relative to the proceeds of a sale <of the stored goods, where the sale and collection of the proceeds, or the collection of the proceeds alone, are undertaken by the warehouseman under .authority from the depositor, has been held not to be within the terms of a bond conditioned upon the faithful performance of ‘acts and duties enjoined upon the warehouseman by law,’ or ‘duty as a public warehouseman, in accordance with the law.’ The latter result has been reached notwithstanding that extrastatutory duties in respect of •collection and remittance of proceeds of stored goods are customarily assumed by warehousemen. * * * ”
In State ex rel. Cawrse et al. v. American Surety Co. of New York et al., 148 Or. 1, 35 P.2d 487, the plaintiffs, wheat farmers, liad deposited some wheat with the warehouseman with the understanding that the warehouseman would sell the wheat for them and then credit their accounts with the proceeds. Pursuant to that agreement the wheat was sold, but plaintiffs’ accounts were not .credited, so plaintiffs sued the warehouseman and his surety for conversion. In holding -that the surety was not liable for such conduct, the Supreme Court of Oregon stated:
“ * * * jn Savage v. Salem Mills Co., 48 Or. 1, 85 P. 69, 10 Ann.Cas. 1065, and State v. Stockman, 30 Or. 36, 46 P. 851, we held that bailments did not arise when grain was delivered to warehousemen under agreements that authorized them to use the grain and discharge their obligation to the depositors by paying for it, or, in the event that the warehouseman neither used nor sold it, to deliver, upon demand of the depositors, a like amount of grain.
“Thus, a warehouseman is a person who receives grain for the purpose of its storage and return. He is not a factor nor a sales agent. Such being true, we are satisfied that if the warehouse company sold grain belonging to the plaintiffs and collected the prices obtained, those services were not performed by it in its capacity as a warehouseman. * * * ”
In Republic Underwriters v. Tillamook Bay Fish Co. et al., 133 Tex. 141, 126 S.W. 2d 641, 121 A.L.R. 1152, the Tillamook Company delivered a shipment of canned salmon to a warehouseman in Texas with the understanding that the warehouseman would deliver it to a certain purchaser, collect the purchase price therefor, and remit it to the Tillamook Company. The warehouseman delivered and collected but failed to remit, so Tillamook sued him and his surety for recovery of the proceeds. The evidence showed that there was a general custom among public warehousemen in Texas to deliver and collect and remit. In holding that the surety was not liable to plaintiffs under its bond and under the Uniform Warehouse Receipts Act, which was in effect in that state, the Supreme Court of Texas held that:
“ ‘ * * * The bond was given in compliance with the provisions of the statute as a prerequisite to the right to *129 qualify as a public warehouseman and it is apparent that the surety in executing the same did so in the light of the statutes then in force defining the duties of a public warehouseman, and the surety’s liabilities so assumed cannot be extended beyond the duties so embodied in the statutes. (Citations omitted). No provision is found in the statutes making it the duty of a public warehouseman to collect and remit the sale price of goods stored with him. * * * The fact that such extra duties are customarily assumed by those engaged in the business does not enlarge the obligation of the surety on the bond where the statute defines the duties of the principal and the bond which was given in compliance with the provisions of the statute merely binds the principal to perform the duties as such in accordance with the law. (Citation omitted).’
* * * * * *
“ * * * The statute defines a warehouseman as a ‘person lawfully engaged in the business of storing goods for profit.’ This definition limits the statutory duties of a warehouseman to ‘storing goods for profit,’ under the provision fixed by law.
“While the warehouseman might make a valid additional contract (which we do not need to decide), the surety’s obligation extends only to the statutory duties.”
In Jensen v. United States Fidelity & Guaranty Company, 78 Idaho 145, 298 P.2d, 976, the plaintiff delivered wheat to a warehouseman and was given “scale or weight slips,” but no “warehouse receipts.” Plaintiff contended the grain was delivered to the warehouse “for storage only,” but the warehouseman contended the grain “was purchased by him.” When the warehouseman failed to pay plaintiff for his grain, he sued the warehouseman and his surety for the amount due him. In holding that the surety was not liable on its bond, the court stated:
“The Bonded Warehouse Law and the Uniform Warehouse Receipts Law make it clear that a warehouseman by the act of delivery does not acquire any right to the goods except to possession. A warehouseman is merely a bailee of the goods stored, 56 Am.Jur. p. 331, and, except as to fungible goods, is under the obligation of delivering the specific goods stored to the owner or other person entitled to possession.
“A surety on a warehouseman’s bond is not liable for the defaults of a purchaser who fails to pay or of a factor who fails to account, State ex rel. Cawrse v. American Surety Co., 148 Or. 1, 35 P.2d 487; Republic Underwriters v. Tillamook Bay Fish Co., 133 Tex. 141, 126 S.W.2d 641; Note, 121 A.L.R. 1157.
“If Hubbard (the warehouseman) was a purchaser of the wheat, title passed to him not later than at the time of delivery and' the obligation to pay the price then or at a time agreed upon attached. Plubbard could not be a purchaser of the grain under obligation to pay the price and at the same time be a warehouseman under obligation to redeliver the grain.”
And, in United States v. Fireman’s Fund Insurance Company, 191 F.Supp. 317 (N.D. Idaho, 1961), where an action was instituted against a warehouseman and his surety for conversion of grain, it was necessary for the court to interpret Idaho’s Uniform Warehouse Receipts Act. The intervenor in that suit, Frazier, had sold the warehouseman a crop of oats, and had agreed that the warehouseman would sell another lot of oats for him to prospective purchasers. The warehouseman’s check for the crop was returned for lack of sufficient funds, and the sale of the other lot of oats failed to materialize, so intervenor sued for the agreed sales price of both. In hold *130 ing that the surety was not liable to inter-venor on its bond, the court stated:
“ * * * it is clear that the relationship between these parties was not that of bailor-bailee which normally results from conducting a warehouse business in accordance with the provisions of the Bonded Warehouse Law * * *. The most reasonable inferences which may be drawn from the conduct of the parties here indicates that either a purchaser-seller relationship existed, or, more realistically, that Melvin was acting as the Intervener’s commercial agent or factor. * * *
“ * * * Since the evidence discloses that the warehouseman here, Melvin, was acting either as a purchaser or a factor who either failed to pay or account, and not as a bailee of Inter-vener’s oats, the Court is of the opinion that the Intervener’s action must fail.”
The decisions hereinabove discussed are based on uniform statutes in effect in the states involved, which statutes are almost identical to the ones applicable in this State. These cases seem to be uniform in holding that where the warehouseman accepts goods for the purpose of selling them as an agent or factor for the owner, as in the instant suit, the relationship between the owner and the warehouseman is not that of bailor and 'bailee, and the surety on the warehouseman’s bond is not liable for the failure of the warehouseman to remit to the owner the proceeds of the sale of those goods-. No, cases have been pointed out to us, and we know of none, where a different conclusion was reached under the same or similar facts.
LSA-R.S. 54:57 provides:
“This Chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which -enact its provisions.”
In view of the legislative mandate expressed in the above-quoted section of the Revised Statutes, we feel that we should follow the pertinent decisions of other states who have enacted the Uniform Warehouse Receipts Act, where there is no conflict in those decisions and where the interpretations followed appear to us to be reasonable, logical and sound. We think the reasoning in each of the cited cases is sound, and accordingly, we hold that the trial court erred in holding that Duplechin’s dealings with plaintiffs were in his legal capacity as a public warehouseman and that New Amsterdam was liable to plaintiffs on its surety bond. In our opinion when a warehouseman accepts grain as an agent for the purpose of selling it, he is not acting as a public warehouseman whose duties are defined by law as the “storing of goods for profit.” And, under those circumstances the warehouseman’s surety is not liable for his failure to remit the proceeds of such sales when the surety’s obligation is restricted by its contract with the warehouseman to his dealings “as a warehouseman.”
In arriving at this conclusion we do not mean to hold that a surety, by appropriate provisions in its contract, could not extend its obligations under its surety bond to include liability for the failure of the warehouseman to remit proceeds of the sale of goods left with him for the purpose of sale. Also, we agree that a different result might be reached in some future case, even under a contract identical to the one involved here, if the Legislature later should see fit to change or enlarge the duties of a warehouseman to include the serving as agent or factor for the sale of goods delivered to the warehouseman for that purpose.
Since we have concluded that plaintiffs are not entitled to recover in these consolidated cases, after reviewing the cases on their merits, it is not necessary .for us to consider the exceptions of' no cause of action and no right of action filed by the defendant-appellant.
For the reasons herein set out, the judgment appealed from is reversed insofar as it (1) condemns defendant, New Amsterdam *131 Casualty Company, to pay a sum of money, with interest and costs, to plaintiff, and (2) condemns the third party defendant, Frank J. Duplechin, to pay a sum of money, with interest and costs, to third party plaintiff, New Amsterdam Casualty Company. In all other respects the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellee.
Affirmed in part and reversed in part.