**AETNA INSURANCE COMPANY,**
**Appellant,**

v.

**JUNCTION WAREHOUSE COMPANY**
**et al., Appellees.**

**No. 25011.**

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1968.

William A. Griffis, Jr., Griffis, Smith, Davis, Rose & Finley, San Angelo, Tex., for appellant.

Pierce Hoggett, Jr., Stevenson & Hoggett, Junction, Tex., John H. Alvis, Wagstaff, Alvis, Charlton & Alvis, Abilene, Tex., for appellee.

Before HUTCHESON, TUTTLE and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge:

Aetna instituted this action of interpleader for determination of its liability to several claimants upon a public grain warehouseman's bond issued for Big Spring Grain & Commission Company. Aetna appeals from a judgment favoring Junction Warehouse Company in the amount of $19,000.

Big Spring was a public grain warehouseman, licensed and bonded as required by Texas law. Tex. Civ. Stat., Art. 5577a, § 3. The bond recited that Aetna, as surety, was

> firmly bound unto the State of Texas and to all persons doing business with said principal as warehouseman * * [that] the said principal shall well and faithfully perform all of his duties as such public warehouseman, * * * This bond made pursuant to the provisions of Senate Bill 215 [Art. 5577a] * * *.

On August 4, 1965, Big Spring's president orally offered to sell and Junction agreed to purchase one million pounds of "two Milo grain" at $1.90 per hundred pounds. Big Spring was to store the grain without additional charge until December 31, 1966, to ship it to Junction as requested, and to issue a negotiable warehouse receipt when payment was received. The oral agreement was confirmed by letter the same day. A draft for $19,000 was enclosed with the contract and paid by Junction. Big Spring returned its printed ticket acknowledging the sale. Junction's officers were unaware that Big Spring did not have the one million pounds of grain;[1] they believed it to be owned by Big Spring and in storage at the time. Although Junction subsequently demanded delivery of the grain and issuance of negotiable warehouse receipts, Big Spring did not comply nor did it return any part of the $19,000.

Aetna's bond assured only the performance of Big Spring's duties as a public grain warehouseman. The issue is whether this transaction and Big Spring's failure to honor its commitment were within the scope of Aetna's liability on the bond—whether there was

---

1. Big Spring was financially straitened. It was hoped that by engagement in this specious sale and others like it Big Spring might acquire sufficient cash to cover its obligations.

here a default in some duty *as warehouseman*. The lower court found that the agreement to store the non-existent grain created a "warehouseman-depositor relationship" and that the ticket issued by Big Spring was a "weight, or scale, ticket" of the type required to be issued on receipt of grain by a warehouseman.[2] Violation of the statutory warehouseman's duties lay in Big Spring's issuance of this scale ticket without having the grain in storage, Art. 5577a, § 7, and in its failure to issue a warehouse receipt upon application by the owner of the grain, Art. 5577a, § 9.

Aetna's position is that the transaction was a sale by Big Spring on its own account to which the storage was only incidental. Aetna contends, in other words, that Big Spring was acting as a seller of grain—a practice common among warehousemen—and not as a public grain warehouseman. If this were true, the activity was not of the type covered by Aetna's bond. However, we find ourselves in agreement with Junction and affirm.

 It is settled Texas law, and the general rule, that a warehouseman's bond is construed in light of the statute which requires it, and the surety's liability is limited to the duties specified by the statute itself. The leading Texas case is Republic Underwriters v. Tillamook, 133 Tex. 141, 126 S.W.2d 641, 121 A.L.R. 1152 (1937, judgm't adopted), where a warehouseman had agreed to sell and collect the price of goods stored with him. The amounts collected were never remitted to the owner. In a suit on the bond, the court held that conducting a sale as a factor was not among the statutory duties of a warehouseman. Because the statute defined a warehouseman as one in the business of "storing goods for profit," this was the only activity covered by the bond.[3] The court in *Tillamook* distinguished an earlier Texas case, Indemnity Ins. Co. v. Archibald, 299 S.W. 340 (Tex.Civ.App.—El Paso 1927, writ dism'd), which involved a similar occurrence. The surety was there held liable for the warehouseman's failure to remit, for the reason that the statute did not "enumerate the duties to be performed by public warehousemen, for the breach of which it [sic] will be liable."

The statute under which Aetna's bond was issued defines a grain warehouseman as one who operates an establishment where grain is "received for storage for others in bulk." Art. 5577a, § 1(b). Given this, our decision would seem an easy one. It might be reasoned that Big Spring donned its warehouseman's hat when it purported to store the non-existent grain for others, namely Junction. The situation would be no different had the grain been supposedly sold to Junction and delivered to Big Spring by a collusive third party while Big Spring represented that it received the grain on Junction's behalf.

 Our reluctance to abide by this analysis stems from the conviction that the transaction should not be labeled a public warehousing merely because Big Spring was a public warehouse. The question is not whether Big Spring pretended to store grain, but whether the pretended storage was undertaken *as a public warehouseman*. We deem it controlling that Big Spring issued a scale ticket[4] and promised issuance of ware-

---

2. Art. 5577a, § 7, specifies that "each warehouseman shall, upon weighing grains and field seeds, issue to the person from whom the same are received a scale ticket in a form or forms approved by the Commissioner [of Agriculture]." The scale ticket is exchangeable for a negotiable warehouse receipt on the demand of the owner.

3. Accord, Loewer v. Duplechin, 161 So.2d 124 (La.App.1964) ; State ex rel. Cowrse v. American Sur. Co., 148 Or. 1, 35 P.2d

487 (1934). But see State, for Use of Altorfer Bros. Co. v. Dalrymple, 227 Minn. 533, 35 N.W.2d 714 (1949), where a different statute was construed.

4. The document issued by Big Spring, a printed sales receipt form, describes "1,-000,000 #2 milo" and acknowledges the price received. Junction's president titled it a "ticket on the sale of the [grain]— where he billed us for $19,000." The trial court characterized the document as a "printed weight, or scale, ticket" and,

house receipts. The statute under which grain warehousemen must operate in Texas, and which determines the scope of Aetna's bond, prescribes these as formalities incident to a public warehousing. Moreover, the Regulations of the Department of Agriculture specify that any facility which receives grain and "issues a scale ticket or warehouse receipt must be licensed under this Act." We interpret this to mean that, although a mere storage or promise to store might not be a warehousing, such a storage or promise when coupled with the issuance of a scale ticket and the promise of a receipt, is sufficiently formalized to come within the purview of the governing statute and, consequently, within the assurance of the bond. The formalities alone do not create a public warehousing[5] —they only serve to characterize a storage agreement as one undertaken in the performance of Big Spring's function as a public warehouseman. Aetna must account for the default, and to this extent the judgment is affirmed.

Junction was awarded the full amount it had paid to Big Spring, with interest from the date of judgment. Junction contends on cross-appeal that it should have interest from November 1, 1965. It was on that date that Junction mailed to Big Spring a letter demanding delivery of the grain and forwarded a copy to Aetna's agent. The letter to Big Spring was returned unclaimed (business had ceased at the warehouse), but Aetna does not dispute that it was notified of the claim at that time.

■ Although interest should be awarded from the date of demand,[6] the letter to which Junction refers was merely an exercise of its contractual "option * * * to have the one million pounds of Milo delivered at its place of business * * *." It was not a demand of payment from Aetna, and the trial court properly refused to allow interest from November 1, 1965. However, instituting litigation is demanding payment, absent an earlier demand, and interest accrues from the date of filing. Wichita Royalty Co. v. City Nat. Bank of Wichita Falls, 127 Tex. 158, 89 S.W.2d 394, reh. denied, 93 S.W.2d 143 (Tex.1935); Munn v. Riggs, 257 S.W.2d 714 (Tex.Civ.App.— Amarillo 1953, no writ). The date of Junction's original petition in the Texas district court does not appear in the record, but we see no reason that interest on the $19,000 should not be computed from that time. Junction's cross-appeal is well

---

although Aetna challenges that determination, we find no basis for overruling it. There is no standard form scale ticket; the Regulations promulgated by the Commissioner of Agriculture require only that the ticket used must be "submitted for approval to Commissioner with application for license." Regs. of the Texas Dept. of Agriculture for Public Grain and Field Seed Warehouses, Regulation 7. There is no evidence that the document in question is not a scale ticket.

5. Aetna's cited cases to this effect, Loewer v. Duplechin, 161 So.2d 124 (La.App. 1964); Jensen v. United States Fidelity & Guaranty Co., 78 Idaho 145, 298 P.2d 976 (1956), are holdings that issuance of a scale ticket at the outset of an admitted warehousing could not change the character of a subsequent sale as factor. Likewise, warehouse receipts do not create a warehousing absent some actual or assumed storage. Central Nat. Bank of Mattoon v. Fidelity & Deposit Co., 324 F.2d 830 (7th Cir. 1963); Central States Corp. v. Trinity University Ins. Co., 237

F.2d 875 (10th Cir. 1956); Fidelity State Bank v. Central Sur. & Ins. Corp., 228 F.2d 654 (10th Cir. 1955). See Maryland Cas. Co. v. Washington Loan & Banking Co., 167 Ga. 354, 145 S.E. 761, 61 A.L.R. 323 (1928); State ex rel. First Nat. Bank v. Federal Union Surety Co., 156 Mo.App. 603, 137 S.W. 613 (Mo.1911), where sureties were held liable for issuance of receipts on goods not in the warehouse.

6. As a general rule, interest is awarded against a warehouseman from the date of demand. See 93 C.J.S. Warehousemen & Safe Depositaries § 83, at 538. The Texas courts allow interest for the loss of use of money or upon a liquidated demand. 17 Tex.Jur.2d, Damages § 27, and sureties are liable for interest from the date of demand upon them. Ward v. Maryland Cas. Co., 140 Tex. 124, 166 S.W.2d 117 (1942, opinion adopted); American Cas. Co. v. Texas Real Estate Commission, 362 S.W.2d 192 (TCA—El Paso 1962, writ ref'd n. r. e.).

taken [7] and the judgment is on this issue reversed and the cause remanded for determination of the damages to be allowed.

Affirmed in part, reversed in part and remanded.

Co. v. Russek, 212 F.2d 338, 342 (5th Cir. 1954).

---

7. Junction has not at any stage requested interest from the date of filing, but this is immaterial where interest is allowable as a matter of law. See Rule 54(c), Fed.Rules Civ.Proc.; Eugene B. Smith &