**ALLIED MUTUAL INSURANCE COM-PANY, a Corporation, Plaintiff,**

v.

**FARMERS NATIONAL COMPANY et al., Defendants.**

**Civ. No. 68-C-2031-C.**

United States District Court
N. D. Iowa,
Central Division.

Aug. 1, 1969.

Kent M. Forney, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for Allied Mutual Ins. Co., a corp.

Ben E. Kubby, Des Moines, Iowa, for defendant, Mrs. Helen Wagner.

John H. Mitchell, John J. Murray, Allan L. Goode, Fort Dodge, Iowa, for de-

fendant, First National Bank of Fort Dodge, Iowa.

Claire Carlson, Bastian, Beisser & Carlson, Fort Dodge, Iowa, for defendant, Farmers Terminal Elevator Co.

Francis L. Cudahy, Cudahy & Wilcox, Jefferson, Iowa, for defendants, A. J. Tasler and Mrs. A. J. Tasler.

W. J. Latham, Johnson, Burnquist & Erb, Fort Dodge, Iowa, for defendants, Margaret Murphy and Ida French.

Donald L. Smith, Hirschburg, Reynolds, Gilchrist, Nutty & Smith, Ames, Iowa, for defendant, M. Isabel Highbarger.

Whitley M. Hemingway, Hemingway, Hemingway & Myers, Webster City, Iowa, for defendant, William H. Schutt.

Arthur H. Johnson, Johnson, Burnquist & Erb, Fort Dodge, Iowa, for defendant, J. F. McKenna.

Albert W. Seeck, Lohrville, Iowa, for defendants, Harold Soy, Patrick Hood, Cecil Cook, Clem Cavanaugh, Mary McGinty, Blair Lohr, Gerald Winchell, Mike Crowley, and Estate of Paul Scollon, deceased.

Andrew H. Schill, Hamilton & Schill, Fort Dodge, Iowa, for defendants, Farmers National Company, Howard Middleton, Arthur Carter, and Lester Aiken.

Alan Loth, Fort Dodge, Iowa, for defendants, Lohrville Grain Co. and Charles Champlin.

Bernard L. Willis, Lake City, Iowa, for defendant, Austin Farley.

Asher E. Schroeder, U. S. Atty., Sioux City, Iowa, for defendant United States in behalf of Commodity Credit Corporation.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This ruling is predicated upon (1) plaintiff Allied Mutual Insurance Company's motion for partial summary judgment, and (2) defendant Farmers Terminal Elevator Company's motion for summary judgment on its counterclaim. Inasmuch as both motions raise essentially legal matter in the nature of motions to dismiss for failure to state a claim, and in absence of any request for hearing thereon, the Court considers these matters upon the present record.

This is an action in the nature of interpleader arising out of the alleged failure of a bonded statutory warehouse. 28 U.S.C. § 1335. The complaint alleges that on or about November 16, 1966 the plaintiff Allied Mutual issued as surety a statutory warehouse bond which recited as principal the defendant Lohrville Grain Co., Inc.; that during the period of the bond the warehouseman Lohrville was found to have insufficient commodities in store to meet outstanding warehouse receipts; that Lohrville has been unable to make up said shortages; and that diverse claimants under various documents of title now threaten the plaintiff Allied Mutual with multiple litigation and a total liability inconsistent with its bonded obligation. Allied Mutual has paid the full amount of its bond into the registry of the Court. The relief sought, inter alia, is a requirement that all claimants against the surety upon its bond interplead to prove the validity and amount of their respective claims.

Pursuant to this complaint Farmers Terminal has filed its claim alleging

that during the month of January 1968 said Defendant purchased fifteen (15) carloads of #2 corn from the Lohrville Grain Company, Lohrville, Iowa; that said purchase called for immediate delivery to the grain terminal at Omaha, Nebraska, and said Farmers Terminal Elevator Company, Inc., paid for same in the amount of $30,000.00; that Lohrville Grain Company failed to deliver nine (9) carloads of said corn which on the date of purchase had a fair market value of $19,248.88 on the Omaha market. Copies of the checks so issued are marked Exhibit "A", attached hereto and made a part hereof.

Together with resistance to Allied Mutual's motion, Farmers Terminal has appended two documents which read in relevant part:

### CONFIRMATION OF PURCHASE

Omaha, Nebr. (1/15/68; 1/23/68)

Lohrville Gr. Co.
Lohrville, Iowa

We confirm purchase from you per _____ of (10;5) cars _____ Bushels _____ at ____ per Bushel F.O.B. Delivered Omaha _____ Weights _____ Grades
Shipment (20 days; 20 days)
Bill cars to us _____
_____ (20,000.00; 10,000.00) _____

———◆———

Farmers Terminal thus claims that the above recitation of facts, the checks and Confirmation of Purchase documents, all require a conclusion that Allied Mutual is liable to this claimant upon its bond within the meaning of Iowa Code Chapter 543.

■■ Allied Mutual is liable to this claimant, if at all, through the language of its bond which defines the ambit of the risk. The bond provides for liability of the surety if the principal fails to

faithfully perform the *duties of a licensed warehouseman,* in conformity with the provisions of the said Chapter 543 * * * and such *obligations as a warehouseman* which may be assumed by him under contracts * * * with depositors of agricultural products in such warehouse * * *

The above language clearly defines the surety's liability in terms of those statutory obligations and duties which its principal has assumed. This limitation is consistent with the general rule. See 9 Appleman, Insurance Law and Practice, Section 5745. The cited language, moreover, indicates that bond coverage extends only to obligations and duties undertaken by the principal *as a warehouseman.* This is a phrase of art. Iowa Code Section 543.1(8) defines "warehouseman" as "a person who uses or undertakes to use a warehouse for the storage of agricultural products for compensation." Cf. Iowa Code Section 554.-1201(45). It follows that Allied Mutual cannot be liable upon its bond to this claimant unless Lohrville's liability derives from the use of "a warehouse for the storage of agricultural products for compensation."

The state of the record negatives any conclusion but that the Lohrville-Farmers Terminal transaction constituted a contractual sale of agricultural commodities with a fixed price and a delivery time of 20 days from date of purchase. And although it may be probable under this record that the goods in question were never deposited with Lohrville, the Court must explore all possible fact patterns which the defendant Farmers Terminal might prove at trial. The instant sale and delivery thus might have taken three forms:

(1) Lohrville was "selling short." At no time were the contract goods in storage with Lohrville.

(2) The contract goods were in storage with Lohrville when the contract was made.

(3) The contract goods were not in storage with Lohrville when the contract was made but were purchased by and delivered to Lohrville before the breach.

It is clear that form No. 1 falls outside the coverage of the bond. There must be a "storage of agricultural prod-

ucts" before the surety's liability may arise.

It is equally clear that forms No. 2 and No. 3 are exclusive of bond coverage. Allied Mutual is liable only for transactions related to storage of products *for compensation*. Farmers Terminal has never claimed herein, and the terms of the documentary evidence tend to negative, any possibility that a storage of commodities for compensation was a part of the bargain and sale. The "Confirmation of Purchase" documents are silent; for all that appears Lohrville was free to procure the contract goods from any source at any time before delivery date. Nor do the pleadings of Farmers Terminal herein suggest the possibility of a compensated storage arrangement. Rather, the defendant's resistance to plaintiff's motion states that "in truth and fact the transaction as set forth * * * was a completed purchase of grain with a delivery order accepted by Lohrville * * *." Title to the contract goods could not have passed to Farmers Terminal, nor was there ever any competent identification of goods to the contract. Iowa Code Sections 554.2401, 554.2501. It suffices to say that no claim has ever been made that a compensated storage arrangement ever existed, the defendant Lohrville describes the transaction as "a completed purchase of grain," and no fact appears supportive of any contrary inference. The Court need not conjure up absurdities to avoid summary relief. The surety was liable under its bond for damages arising out of transactions which involved "the storage of agricultural products for compensation." Whether this plaintiff's motion is construed as predicated upon Rule 12 or Rule 56, it is clear that no fact pattern reasonably provable by Farmers Terminal will support its claim and that Allied Mutual is entitled to judgment as a matter of law.

Farmers Terminal asserts, however, that the above result is changed by the operation of Iowa Code Section 543.17 which provides in relevant part:

"543.17 *Acceptance of bulk grain for purposes other than storage*

"Any warehouseman, whether or not licensed under the provisions of this chapter, may accept a deposit of bulk grain for the purpose of sale to the warehouseman, for the purpose of processing and cleaning, for the purpose of shipping by the warehouseman for the account of the depositor, or for any other purpose not inconsistent with other provisions of this chapter. Bulk grain deposited with a licensed warehouseman with instructions to hold for further instructions, or with instructions for any other disposition, may be retained by him in a licensed warehouse for a period of thirty days or more provided that any retention for a period of more than twenty-nine consecutive days shall, commencing with the thirtieth day, be deemed to be a retention for storage pending other disposition of the bulk grain and provided further that not later than the thirtieth day from the date of deposit of the bulk grain such licensed warehouseman shall issue warehouse receipts therefor. Any grain, which has been received at any bonded warehouse and for which the actual sale price is not fixed and payment made therefor within thirty days after the receipt of said grain, is construed to be grain held in storage within the meaning of the Iowa bonded warehouse law and warehouse receipts shall be issued therefor to the depositor not later than the thirtieth day after the receipt thereof."

The issues thus raised by defendant appear to be matters of first impression in Iowa. The attorney general has offered his opinion that a warehouseman's bond secures only those duties related to the storage of agricultural products for compensation and that storage under a contract for other than said purpose would be outside the bond, Op.Atty.Gen., April 10, 1957; this Court has indicated that an in-store purchase of grain does not *alone* negative a claim against the bond, United States v. Merchants Mut.

Bonding Co., 242 F.Supp. 465 (N.D.Iowa 1965) ; but no analysis of Section 543.17 as it relates to bond coverage has been found in the Iowa authority.

■ There is, however, much to suggest that Section 543.17 controls areas of conduct which are outside of and totally unrelated to spheres of bond coverage. The section is entitled "Acceptance of bulk grain for purposes other than storage." "Storage" is not a purpose contemplated by the section, yet "storage" is the key word of Chapter 543's warehouseman definition and bonding provisions. Iowa Code Sections 543.1, 543.12, 543.14. It would thus appear that Section 543.17 contemplates non-bonded activities, a conclusion also strengthened by the permissive language of the statute. The terms of the instant bond and the relevant bonding Sections 543.12 and 543.14 are cast in terms of the "duties" and "obligations" of the warehouseman. Section 543.17 is discretionary: the warehouseman "may" engage in certain conduct if he so desires. This indicates that the section was meant to codify what might otherwise have been rendered doubtful by negative implication and that a warehouseman may engage, in terms of bond and other consequences, in non-"warehouseman" activities. This reading of Section 543.17 means that, whatever the legal consequences of conduct regulated thereunder, such conduct is outside the scope of the statutory "warehouseman" and in general outside the bond provisions of Chapter 543. The section thus may have the effect of protecting those who deal with warehousemen in certain transactions (as by giving preferred or clearly defined status to depositors who fail to protect themselves), but this protection is unrelated to any that might exist under the bond.

■ Assuming, however, that the above over-view of Section 543.17 is erroneous and that the section may contemplate certain bond consequences, it is further clear that the relevant conditions of the section are not satisfied by the instant fact pattern.

The first sentence of Section 543.17 contemplates warehousemen who may or may not be licensed pursuant to Chapter 543. If the warehouseman is not so licensed the bond provisions of Section 543.12 are inapplicable. It follows that this sentence cannot be construed as bringing all the enumerated activities within the bond.

The second sentence, as the entire section, is inapplicable unless there has been a deposit of grain in the warehouse. This is clear beyond controversy from the language of the section and the title thereof. And even if Farmers Terminal should be able to prove a deposit of grain the section is still inapplicable under these facts. The common thrust and clear intent of Section 543.17 is protection *to the person who actually deposits grain.* This claimant is not such a person. The one fact pattern clearly negatived by a purchase of grain is a deposit of the same grain by the same person. It is further clear that the second sentence of Section 543.17 was only intended to provide certain legal consequences in the absence of clear instructions and upon the passage of 30 days for the benefit of a person who might otherwise have no adequate remedy. In the instant case the grain was to be delivered in 20 days at a fixed price. The instructions are clear and unambiguous. This depositor, unlike those contemplated by the second sentence, has an adequate remedy upon his contract. Finally, it is reasonable to suppose that an implied condition of the second sentence is that a period for disposition of less than 30 days has *not* been set. This condition is inconsistent with any facts provable by the defendant.

The third sentence of Section 543.17 is applicable only to transactions involving grain of uncertain price. This condition is inconsistent with any facts provable by this defendant.

■ The defendant also argues that under the Iowa Uniform Commercial Code it is the holder of documents of title which enjoy protected status under the bond provisions of Chapter 543. It suffices to say that the UCC and Article 7

thereof govern certain legal consequences of commercially formalized transactions, but the impact of the instant transaction upon the surety's obligation is not one such consequence. In this regard it is worthy of mention that the comment to Iowa Code Section 554.7102 (UCC 7–102) declares that "The warehouseman's compliance with applicable state regulations such as the filing of a bond has no bearing on the substantive issues dealt with in this Article." It also follows from an examination of Article 7 that the substantive provisions thereof are unrelated to the bond provisions of Chapter 543.

The Court has examined with care the entire record in this case. Resolving every inference and possibility of fact in favor of defendant Farmers Terminal, still the Court must conclude that no fact pattern reasonably provable at trial by this defendant will support any claim against this plaintiff.

Accordingly, it is hereby ordered that plaintiff Allied Mutual Insurance Company's motion for partial summary judgment is sustained in accordance with the terms thereof.

It is further ordered that the defendant Farmers Terminal Elevator Company's motion for summary judgment on its counterclaim is overruled.

It is further ordered that each party will bear its proportionate costs.