CULPEPPER, Judge.
This is a concursus proceedings. The plaintiff, Western Surety Company, issued a surety bond in the sum of $25,000 to James Mallett for the faithful performance of his duties as a warehouseman under the provisions of LSA-R.S. 54:1, et seq. After the warehouseman defaulted on many of his obligations, plaintiff filed the present con-cursus proceedings and deposited in the registry of the court the sum of $25,000. Cited as adverse claimants to the funds are: (1) Avoyelles Farmers Co-operative, (2) American Bank of Welsh, (3) The Sweetlake Land & Oil Company, Inc., and (4) Allied Chemical Corporation. Prior to trial on the merits, Allied Chemical Corporation acquiesced in a summary judgment rejecting its claim. After a trial, the district judge rejected the claims of Avoyelles Farmers Co-operative and American Bank of Welsh. Judgment was rendered in favor of The Sweetlake Land & Oil Company, Inc. for $25,000. Avoyelles Farmers Cooperative, and American Bank of Welsh appealed. Western Surety Company also appealed, seeking reversal of the judgment in favor of The Sweetlake Land & Oil Company and return of the $25,000 deposited.
The general facts show James Mallett was licensed under the provisions of LSA-R.S. 54:1, et seq. to operate a public warehouse and issue negotiable warehouse receipts for the storage of farm products. The surety bond issued by Western to Mal-lett insures that he shall “faithfully perform all duties and obligations to all parties doing business with said principal as a warehouseman * * * and otherwise conducts his said business in accordance with the provisions of the Louisiana Revised Statutes of 1950, Title 54, Chapter 4 # * * »
In addition to his business as warehouseman, Mallett also engaged in farming and buying and selling seed, fertilizer and chemicals on a large scale. He became heavily indebted and these various business enterprises finally collapsed. It was then discovered that he did not possess sufficient rice, beans, etc. to satisfy warehouse receipts which he had issued.
We will first discuss the claim of The Sweetlake Land & Oil Company, Inc. In connection with his personal farming operations, Mallett had contracted for several years with Sweetlake for water to irrigate his rice crop at a price of one-fifth of the rice produced. In addition, Mallett planted rice on land owned by Sweetlake at a rental of one-half of the rice produced. Mallett harvested the entire crop and stored it in his bins without charging Sweetlake a storage fee for its rice. With Sweetlake’s approval as to the price, Mallett usually sold the rice and remitted to Sweet-lake its share of the proceeds. However, Sweetlake had the right to demand its share of the rice in kind. Mallett did not issue *118 to Sweetlake a negotiable warehouse receipt. Instead, he sent them a weight and volume receipt evidencing the fact that a portion of the rice harvested and stored in his bins was owned by Sweetlake.
Under these facts, Sweetlake’s claim against Mallett does not arise from his business as a warehouseman. Sweetlake is neither a depositor nor the holder of a warehouse receipt, LSA-R.S. 54:8. It did not deliver rice to Mallett for storage, was not issued a warehouse receipt, and was not charged a storage fee. Instead, Sweetlake’s claim against Mallett is for the rentals due for water and land under the contracts described above. Hence, we conclude that Sweetlake has no claim under the surety bond furnished by Western.
Applicable here is the rationale of Loewer v. Duplechin, La.App., 161 So.2d 124 (3rd Cir. 1964), writ of certiorari refused. In that case, plaintiff delivered rice to the defendant warehouseman under an agreement whereby the defendant was to sell the rice for an agreed price and retain as a commission any excess. We held that plaintiff’s claim against Duplechin did not arise out of his business as a warehouseman. Duplechin was merely acting as a broker for the sale of rice. Hence, there was no liability on the warehouseman’s surety bond.
We will next consider the claims of Avoyelles Farmers Co-operative and American Bank of Welsh. Both of these claims are based on negotiable warehouse receipts issued by James Mallett in his capacity as warehouseman for soybeans of which James Mallett individually is shown on the receipts to be the owner. The receipts state that the warehouse received from James Mallett for storage in “Mallett Rice Drier” the soybeans described, and state that “upon the return of this receipt, properly endorsed, and the payment of all charges and liabilities due the undersigned warehouseman, as stated herein, said lot will be delivered to the above named depositor or his order.” (Emphasis supplied)
The warehouse receipt held by Avoyelles Farmers Co-operative was pledged to it by James Mallett to secure a debt of approximately $75,000 owed by Mallett to Avoyel-les. The warehouse receipt held by American Bank of Welsh was pledged to it by Mallett to secure a loan in the sum of $20,000. However, neither of these warehouse receipts is endorsed by James Mal-lett, and there are no written instruments of pledge.
The Warehouse Receipts Act, LSA-R.S. 54:2, requires that such receipts show “(8) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownershipThus, the statute clearly contemplates that a warehouseman can issue a receipt for goods of which he is the owner. In order to comply with this requirement, the warehouse receipts held by Avoyelles Farmers Co-operative and American Bank of Welsh show on their face that James Mallett is the sole owner of the beans described.
LSA-R.S. 54:2 also requires that warehouse receipts contain “(4) A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order;”. In the present case, the receipts state that the goods received will be delivered to a specified person, James Mallett, or his order. However, the receipts are not endorsed by James Mallett.
LSA-R.S. 54:8, which states the obligations of warehousemen, provides in pertinent part:
“A warehouseman, in the absence of some lawful excuse provided by this Chapter, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with:
‡ ‡ ifc ‡
“(2) An offer to surrender the receipt if negotiable, with such indorsements as would be necessary for the negotiation of the receipt. * * * ”
*119 LSA-R.S. 54:9 states in pertinent part that a warehouseman is justified in delivering the goods to one who is:
“A person in possession of a negotiable receipt by the terms of which the goods are deliverable to him or order or to bearer, or which has been indorsed to him or in blank by the person to whom delivery was promised by the terms of the receipt or by his mediate or immediate indorsee.”
Furthermore, LSA-R.S. 54:38 requires the endorsement of a specified person to whose order the goods are deliverable. And LSA-R.S. 54:39 and 54:43 provide for the situation where a negotiable receipt is transferred without endorsement by giving the transferree the right to compel the transferrer to endorse the receipt but 54:43 expressly provides “The negotiation shall take effect as of the time when the indorsement is actually made.”
From the above statutory provisions we see that the warehouseman in the present case is neither obligated nor justified to deliver the goods to Avoyelles Farmers Cooperative or American Bank of Welsh, since the negotiable receipts which they hold are not properly endorsed. And, since the warehouseman has not violated his obligation, there can be no recovery on his surety bond.
Avoyelles and American Bank argue that even though the warehouse receipts which they hold are not properly endorsed, they were validly pledged under Civil Code Article 3158, which sets forth the formalities required for the pledge of promissory notes and other written obligations. With reference to warehouse receipts in particular, this Code article provides:
“ * * * the delivery of property on deposit in a warehouse, cotton press, or on storage with a third person, or represented by a bill of lading, shall pass to the pledgee by the mere delivery of the warehouse receipt, cotton press receipt, bill of lading, or storage receipt, showing the number, quantity or weight of the thing pledged; and such pledge so made, without further formalities, shall be valid as well against third persons as against the pledger thereof, if made in good faith.”
Under the relative portion of Article 3158 quoted above, the ownership of the beans on deposit in the warehouse passed from Mallett to Avoyelles Farmers Cooperative and American Bank of Welsh respectively by the mere delivery of the warehouse receipts to them, without further formalities. However, as regards the obligation of the warehouseman, these provisions of Article 3158 must be considered in the light of LSA-R.S. 54:8(2) and 54:9(3) quoted above, which state that he is neither obligated nor justified to deliver the goods to the holder of a negotiable receipt, unless the receipt is properly endorsed.
It appears that Avoyelles Farmers Cooperative and American Bank of Welsh may be able to seek relief under LSA-R.S. 54:43 which reads as follows:
“Where a negotiable receipt is transferred for value by delivery, and the in-dorsement of the transferrer is essential for negotiation, the transferee acquires a right against the transferrer to compel him to indorse the receipt, unless a contrary intention appears. The negotiation shall take effect as of the time when the indorsement is actually made.”
Under this statute, Avoyelles and American Bank may be able to compel Mallett to endorse the receipts, and after this is done they could present the receipts to the warehouseman and demand delivery of the beans. Since it appears that Avoyelles Farmers Co-operative and American Bank of Welsh may be able to seek relief on these same causes of action in further proceedings, we have decided that in the interest of equity we will dismiss these two claims without prejudice, LSA-C.C.P. Articles 1673 and 1844.
For the reasons assigned, the judgment appealed is reversed and set aside. It is *120 now ordered, adjudged and decreed that the claim of The Sweetlake Land & Oil Company, Inc. is dismissed with prejudice. It is further ordered, adjudged and decreed that the claims of American Bank of Welsh and Avoyelles Farmers Co-operative be dismissed without prejudice to their respective rights to file further proceedings on the same causes of action. All costs in the lower court, as well as the costs of this appeal, to be deducted from the funds on deposit in the registry of the court.
Reversed and rendered.