277 So.2d 627 (1972)
WESTERN SURETY COMPANY
v.
AVOYELLES FARMERS CO-OPERATIVE et al.
No. 51927.
Supreme Court of Louisiana.
November 6, 1972.
On Rehearing May 7, 1973.
*628 Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, for defendant-applicant.
Hall, Raggio & Farrar, Richard A. Chozen, Lake Charles, for plaintiff-respondent.
James N. Lee, John W. Hebert, Jennings, Edwards, Stefanski & Barousse, Nolan J. Edwards, Crowley, for defendant-respondent.
SUMMERS, Justice.
James Mallett (Mallett), a farmer, a seller of seed, fertilizer and chemicals, also owned and operated on his farm a group of Butler Bins, a combination grain storage and drying facility. On December 15, 1969, he completed his qualifications for licensing as a State Regulated Farmers' Warehouse pursuant to Sections 241-60 of Title 54 of the Revised Statutes. The requisite bond was issued on that day by Western Surety Company (Western).

I.
Mallett had, for a number of years, planted rice on the lands of Sweetlake Land and Oil Co., Inc. (Sweetlake). By their agreement, Sweetlake furnished the land, water for irrigation and one-half of the cost of seed and fertilizer. In turn, Mallett planted and harvested the crop, dried Sweetlake's share, which was one-half, and stored it until sold. Another arrangement involved the furnishing of water *629 by Sweetlake to Mallett for irrigating rice planted by Mallett on lands belonging to others. For this Sweetlake received one-fifth of the crop; it being understood it would be dried and stored in Mallett's warehouse until sold.
Under these agreements, Mallett issued weight and volume receipts to Sweetlake on December 16, 1969, evidencing the storage in Mallett's warehouse of Sweetlake's share of rice having a value of $26,546.40. When Sweetlake sought delivery in kind of the rice, Mallett was unable to produce it.

II.
Avoyelles Farmers Cooperative (Avoyelles) sold a quantity of soybeans to Mallett in December, 1969, for $75,541.34. Mallett issued his postdated check in payment. Inasmuch as Mallett was otherwise heavily indebted to Avoyelles, it demanded and received from Mallett a negotiable warehouse receipt as collateral security for his check. The warehouse receipt was drawn by Mallett to himself or his order; it described the beans and otherwise met the formalities prescribed by the Warehouse Receipts Act (La.R.S. 54:1-58). However, it was not endorsed.
In May, 1970, Avoyelles instituted suit and obtained judgment against Mallett for $209,320.83. In executing the judgment, Avoyelles seized the soybeans in Mallett's warehouse and caused them to be sold. It realized $14,301.73 therefrom. Otherwise, nothing remained in Mallett's warehouse to satisfy the warehouse receipt. Avoyelles, therefore, asserts a balance due of $61,239.61 on the warehouse receipt.

III.
In February, 1970, Mallett also issued an undated warehouse receipt to his (Mallett's) order for rice owned by him and stored in his warehouse. The receipt was pledged to American Bank of Welsh (American) to secure a loan of $20,000, evidenced by a promissory note, which Mallett simultaneously negotiated with American. This warehouse receipt was also not endorsed. Later, American brought suit on the note, obtained judgment and seized the rice in Mallett's warehouse. Only $1,000 was realized from this sale. American asserts a claim for $19,858.93the balance due on its note after all credits were allowed.

IV.
When it became evident that Mallett had collapsed financially, Western provoked this concursus proceeding, deposited the $25,000 bond liability in the registry of court and cited all claimants to assert their rights. While a number of parties made appearances and asserted claims, all have been dismissed except those of Sweetlake, Avoyelles and American.
In the trial court judgment was rendered in favor of Sweetlake against Western in the full sum of $25,000, the extent of Western's liability as surety under the warehouseman's bond. The claims of Avoyelles and American to the funds deposited by Western were rejected. In the Court of Appeal, this judgment was reversed. There, Sweetlake's claim was disallowed on the finding that Mallett's dealings with Sweetlake were not that of a warehouseman as contemplated in law or by the terms of the bond issued by Western. The claims of Avoyelles and American were dismissed without prejudice because the warehouse receipts they held, and upon which they based their respective claims, were not endorsed by Mallett. In its opinion, the Court of Appeal stated that Avoyelles and American could perhaps, in the future, compel Mallett to endorse the receipts and then present them to the warehouseman and demand delivery of the goods for which they were issued. La. App., 255 So.2d 116. We granted certiorari. 260 La. 123, 255 So.2d 351.

V.
Sweetlake's claim against the surety Western is valid. Western's bond was issued *630 in accordance with the terms and provisions of Title 54, Chapter 4 of the Revised Statutes to assure "all parties doing business with said Principal as a warehouseman.. . ." It is a condition of the bond that Mallett "shall honestly conduct said business, faithfully perform all duties and obligations to all parties doing business with said Principal as a warehouseman, and shall pay all monies and accounts owed by him to . . . any person. . . whatsoever arising out of his conduct of such business of a warehouseman in farm produce. . . ."
Chapter 4 of Title 54 (La.R.S. 54:241-60) prescribing the qualifications of a "State Regulated Farmer's Warehouse," requires each such warehouse to obtain a bond, and, ". . . The bond shall be conditioned on the faithful performance of duties and obligations to the patrons of the warehouse and of the provisions of this Chapter and the regulations prescribed by the commission. . . ."
Generally, it is understood, and by statute it is declared, that a "`Warehouseman' means any person lawfully engaged in the business of storing goods for profit." (La.R.S. 54:58, 181).
Our problem, then, is to decide whether Mallett's obligation to store Sweetlake's share of the rice is part of his being "engaged in the business of storing goods for profit."
Avoyelles and American, along with Western, oppose Sweetlake's claim. Principally, the opposition is based upon the fact that Sweetlake holds no warehouse receipt issued by the warehouseman, and that no storage charge was paid by Sweetlake to Mallett.
A warehouse receipt is not an indispensable prerequisite to asserting a claim against a warehouseman on account of his failure to fulfill his obligations to "honestly conduct" the business and to "faithfully perform all duties and obligations to all parties doing business with said. . . warehouseman . . . arising out of his conduct of such business of a warehouseman in farm produce . . . ." Although State Regulated Farmers' Warehouses are authorized to issue warehouse receipts in accordance with the Warehouse Receipts Act, this authorization is not the exclusive function of these warehouses, nor is it the exclusive basis for liability of the surety under the warehouseman's bond.
Warehouse receipts do fix the standard of care to be exercised in order to hold the warehouseman liable for loss or injury to the goods in storage for which receipts have been issued. The receipts, which are negotiable, permit them to be conveniently used in commercial transactions. The Warehouse Receipts Act provides a uniform, recognized set of rules for their confection, negotiation, etc., and, although the regulation for the issuance of warehouse receipts are fixed by that Act, a warehouse receipt need not be issued for all things stored in State Regulated Farmers' Warehouses.
A weight receipt for rice received for storage at least imposes the liability of a depositary on the warehouseman. (La. Civil Code arts. 2926-71). A violation of these obligations, as here, compels the surety to compensate the party doing business with the warehouseman. There are other, and numerous, ways in which a warehouseman in the conduct of his business of "storing goods for a profit" may violate his obligations to those doing business with him other than the issuance of warehouse receipts. Farmers Elevator Mutual Ins. Co. v. Jewett, 394 F.2d 896 (10th Cir. 1968).
It may be true that Mallett acted in several capacities in his dealings with Sweetlake, but, notwithstanding the many hats he wore, his agreement to store Sweetlake's share of the crop in his warehouse was, to that extent, part of his business as warehouseman.
*631 Nor was it necessary that the charge for storage be cash. The use of Sweetlake's land, their water for irrigation, and their payment of one-half the cost of seed and fertilizer, are valid and serious considerations in return for Mallett's end of the bargain, which included the storing of Sweetlake's share of the rice. No doubt, too, the storage was a vital part of the bargain, to preserve the crop from destruction by the elements and from theft, until it was either sold or otherwise disposed of by Sweetlake. Business is not always done on a cash basis. A "profit" can readily be realized in a transaction without the exchange of currency.
The facts of this case do not permit our decision to be influenced by the holding in Loewer v. Duplechin, 161 So.2d 124 (La. App.1964). The Loewer case involved a situation where several farmers delivered their rice to a warehouseman with the understanding that the warehouseman would sell the rice for a stipulated price. Instead, the warehouseman sold the rice and could not account to the farmers for the purchase price. The court held that the warehouseman was appointed as agent, broker or factor for the farmers to dispose of their rice and he was not acting as "warehouseman" in legal contemplation. On this basis, the surety on the warehouseman's bond was exonerated of all liability for the warehouseman's failure to pay the agreed purchase price.
Without commenting upon the merits or demerits of the Loewer case, it suffices to say that situation does not exist here. Mallett was not appointed as agent, broker or factor for the purpose of selling Sweetlake's share of the rice. To the contrary, although he often sold Sweetlake's rice as an accommodation, it was necessary that he obtain their consent in advance for each transaction. In addition, it was understood between them that Sweetlake was at all times entitled to demand delivery of its rice in kind.
Mallett's defalcation is obviously a breach of his obligation to Sweetlake as warehouseman and we so hold. The surety is responsible. Bickham v. Womack, 181 La. 837, 160 So. 431 (1935); Farmers Elevator Mutual Ins. Co. v. J. R. Milam Co., 435 F.2d 140 (5th Cir. 1970); Aetna Ins. Co. v. Junction Warehouse Co., 389 F.2d 464 (5th Cir. 1968).

VI.
The claims of Avoyelles and American are strikingly similar. In fact, the same brief is relied upon by both litigants. The opposition to their claims is based upon the contention that, although each holds a warehouse receipt, neither receipt is endorsed and the holders of the receipts acquire no rights until endorsement by Mallett. La.R.S. 54:5, 9, 37, 38, 47 and 57.
The argument and reliance upon the cited sections of the Warehouse Receipts Act overlooks the explicit and controlling authority on the point. It is Section 42 of Title 54 which, in pertinent part, provides: "A person to whom a receipt has been transferred but not negotiated acquires thereby, as against the transferrer, the title to the goods, subject to the terms of any agreement with the transferrer."
In our view, the transfer of the negotiable warehouse receipts by Mallett to Avoyelles and American vested thereby, as against Mallett, title to the beans and rice in the holders of the receipts. And, since the terms of the agreement between Mallett and Avoyelles and Mallett and American was to the effect that the beans and rice would stand to satisfy Mallett's obligations to the holders of the receipts, nothing about the agreements between them militated against the acquisition of title to the goods by the holders of the receipts.
Thus, when Mallett disposed of the beans and rice, title to which had been vested in Avoyelles and American by virtue of the transfer of receipts to them, without applying the proceeds to the receipt obligations, he did not "faithfully perform all duties and obligations to all parties doing business" with him. Furthermore, *632 Mallett "failed to pay all monies or accounts owed by him . . . arising out of his conduct of such business of warehouseman in farm produce." In doing so, Mallett rendered himself and his surety liable for his misappropriations.
For the reasons assigned, judgment is rendered herein adjudging that Sweetlake, Avoyelles and American are entitled to share in the $25,000 deposited in the registry of the court in the proportion which their respective claims bear to the sum of the three claims.
BARHAM, J., dissents.

ON REHEARING
SANDERS, Chief, Justice.
Sweetlake Land and Oil Co., Avoyelles Farmers Cooperative, and the American Bank of Welsh were recognized in our original opinion as the only valid claimants to the fund at issue in this suit, the proceeds of a surety bond issued by Western Surety Company securing the faithful performance of James Mallett as a warehouseman. Sweetlake, by petition for rehearing, raises the question of whether or not it should be first as among these three. We granted a rehearing solely to consider that question.
The general rule is, of course, adverse to Sweetlake's claim. The Louisiana Civil Code is clear that the property of the debtor is the common pledge of his creditors and remains so absent a lawful cause for privilege. LSA-C.C. Art. 3182.
Sweetlake, however, contends that, as holder of the earliest warehouse receipt, it is entitled to such a preference by virtue of Louisiana Civil Code Article 3158, providing in part:
"[T]he delivery of property on deposit in a warehouse, cotton press, or on storage with a third person, or represented by a bill of lading, shall pass to the pledgee by the mere delivery of the warehouse receipt, cotton press receipt, bill of lading, or storage receipt, showing the number, quantity or weight of the things pledged; and such pledge so made, without further formalities, shall be valid as well against third persons as against the pledger thereof, if made in good faith. Such receipts shall be valid and binding in the order of time in which they are issued for the number, quantity, or weight of the things pledged, if there should not be enough to meet all receipts so issued."
We disagree with this contention.
Article 3158 grants a privilege only upon the quantity or weight of material (in Sweetlake's case, rice) identified in a specific receipt. Here, the grain has long since been transferred from the warehouse and reduced to money. The money from the transaction is neither identifiable nor available.
Under these circumstances, our holding in Daugherty v. Canal Bank and Trust Co., 180 La. 1003, 158 So. 366 (1934) governs. There we stated:
"There has been a number of decisions interpreting Article 3222, R.C.C., which deals with deposits in kind. It has been uniformally held that, in order for the principal to recover his property deposited with the defaulting agent or trustee, he must identify it. If it can be properly identified then, of course, the principal is entitled to secure the return of his property in preference to other creditors of the defaulting agent or trustee, on the ground of ownership thereof. But, where there has been a commingling of the thing deposited by the defaulting agent or trustee so that its identity has been destroyed, the principal is then treated as a creditor of the defaulting agent's estate and shares pro-rata with his other creditors. Longbottom's Executors v. Babcock, 9 La. [44] 50; Succession of Stone, 31 La.Ann. [311] 314; In re Louisiana Savings Bank & Safe Deposit Co., 40 La.Ann. 154, 4 So. 301; Succession of Boisblanc, 32 La.Ann.

*633 109; Clay v. His Creditors, 9 Mart. (O.S.) 519."
Article 3185 provides that "[p]rivilege can be claimed only for those debts to which it is expressly granted in this code." Privilege statutes are in derogation of common rights and must be strictly construed.
We hold that Article 3158 does not confer upon the holder of the earliest warehouse receipt a preference to the proceeds of the surety bond. Rather, as decreed on original hearing, the law requires that the bond funds be prorated among the recognized claimants.
In its supplemental petition for rehearing, Sweetlake asserts that the amount due American Bank on its judgment after proper credits is $12,125.63. This assertion is incorrect. At the trial, the parties stipulated that the amount due after all credits had been taken was $19,858.93. (Tr. 117)
For the reasons assigned, the original decree is reinstated and made the final judgment of this Court.
DIXON, J., concurs.