WICKER, Judge.
Aquatron International, Inc. and its insurer, National Union Fire Insurance Company, appeal a judgment awarding the plaintiff, Harold Theriot, worker’s compensation benefits and medical expenses. The issues are the extent and permanency of Theriot’s disability and the effect of Theri-ot’s present employment on his rate of compensation. We affirm.
Theriot, age 55, worked as a laborer for Aquatron and hurt his left lower abdomen doing heavy lifting on November 15, 1985. Thirty years earlier he had injured his back in an automobile accident, resulting in a spinal fusion; however, Theriot apparently had no residual pain or disability from this injury. Theriot sought medical advice for his injury and was diagnosed as having an “inguinal hernia,” which “hernia” was repaired surgically on November 21, 1985. He continued to complain of pain, however, and saw several specialists over the next few months. Theriot was released to return to work on May 12, 1986, but did not do so. On August 22, 1986, he had a second surgery to release “trapped nerves,” a result of his “hernia” surgery, in the groin area.
Theriot returned to work intermittently October 3, 1986, having received worker’s compensation from November 16, 1985, through October 3, 1986. He filed suit for compensation on March 12,1987; Aquatron laid him off on April 24, 1987.
The trial judge awarded Theriot compensation at the rate of $146.66 per week “until further orders of the Court”; ordered that accrued amounts since October 3, 1986, be paid in a lump sum including interest, subject to a credit for any compensation previously paid; and ordered payment of all past and future medical, surgical, or hospital expenses attributable to Theriot’s injury. In his reasons the trial judge noted the disagreement among the various physicians who either treated or examined Theriot. He concluded that “at the time of termination of workmen’s compensation benefits, plaintiff could not perform his duties because of an injury received in connection with his employment.” Aquatron and National Union suspensively appealed the judgment; and Richard A. Weigand, Theriot’s trial attorney, intervened in this appeal for his expenses and attorney’s fees.
*558 EXTENT AND PERMANENCY OF DISABILITY
Theriot denied ever complaining about groin pain but testified that his complaint was about his stomach. His back didn’t hurt originally; but eventually he had pain in his hip, spine, and legs. His two surgeries, a hernia operation and surgery to repair the damage from the first operation, didn’t help, so the insurance compnay sent him to other doctors. He testified that he had no other auto or work accidents between his spinal fusion in 1955 and his on-the-job injury and that he worked every day in that thirty-day period.
All medical evidence was submitted on records, depositions, and reports, with counsel stipulating to their admissibility and authenticity, but not necessarily to their contents.
Theriot’s surgeon operated on him shortly after the accident. He found a tender mass in the left inguinal region and removed, not a true hernia, but a false hernia or lipoma (fat). Because Theriot continued to complain of pain, he injected him with xylocaine, which failed to produce relief.
This was strange and indicated to me the possibility that the original pain (and the present pain) were unrelated to the lipo-ma and to the surgery. Another confusing sign then occurred when he identified similar pain in the opposite groin, also not relieved when the left nerve was blocked.
The surgeon reoperated for the relief of trapped nerve syndrome, but the nerves and previous repair work were found to be normal. He concluded,
It is possible, but not provable now, that all of his pain originates in and is referred from the old spinal condition. I believe the lipoma hernia could have been related to work stress.
Over the next two years, Theriot saw among others a neurologist, a neurosurgeon, and another general surgeon, none of whom were able to precisely diagnose the reason for his continued pain. He was treated for various possible conditions without success and was prescribed various medications, including antibiotics, Dilantin, Sinequan, Novocaine, Cortisone, Tegretol, and Elavil. Generally, tests were normal; but a CT scan did reveal a bulge at LB-4, above his old fusion at L4-5. One surgeon began to suspect that Theriot’s pain was caused by referred pain from the lower back, although he found no objective symptoms of back disease.
Theriot’s present physician, a specialist in orthopedic surgery limited to the spine, did further studies and found advanced degeneration of L3-4, with complete collapse of the disk, spur formation, and overgrowth of joints. He related Theriot’s L3-4 symptoms to the history of onset of pain he experienced when lifting in 1985. No further treatment was undertaken, although diagnostic studies and surgery were recommended, because National Union refused to pay for it.
A final specialist, an orthopedic surgeon specializing in the hand, was consulted following trial, with the record held open for this additional opinion. He found degenerative disk disease at L3-4.
Both doctors who expressed an opinion on disability found Theriot to be disabled in his present condition. One felt that, even with a successful repair, he would only be able to do light work or work in a supervisory capacity.

Paul Jones

He is an adjuster and claims supervisor for American International Adjustment Company. He was the third adjuster who worked on Theriot’s file. He didn’t pay further benefits to Theriot or medicals for LaRocca’s recommended surgery because he felt LaRocca’s recommendations were inconsistent with the nature of Theriot’s injury. He relied on Logan’s report: “It is possible but not probable now that all of his pain originates in and is referred from the old spinal condition [sic].” The insurance company sent Theriot to or authorized him to see seven doctors; it did not authorize him to see Miller and LaRocca because Theriot had already exercised his choice of doctors.
All medical evidence was submitted on records, depositions, and reports, with *559 counsel stipulating to their admissibility and authenticity, but not necessarily to their contents.

Michael F. McSween, M.D.

The reports of this family practitioner were entered into evidence. McSween first saw Theriot on November 18, 1986 [1985], and referred him to a surgeon. He saw him again on March 4, 1986 with complaints of pain in the area of the incision, lower left abdominal pain, and pain in both testicles. McSween prescribed anti-depressant medication. He referred Theriot to a urologist who treated Theriot with antibiotics for prostatitis and a neurologist who prescribed new medicine.
We find sufficient support in the medical evidence for the trial judge’s conclusion that Theriot was disabled from doing his job due to an injury received in connection with his employment. Although some of the evidence is contradictory, it is evident that his “hernia” and subsequent “trapped nerve” were not the cause of Theriot’s pain. The only other suggested cause is his thirty-year-old back injury. Theriot’s testimony that this old injury was asymptomatic was unrebutted, and the fact that Theriot had worked as a laborer without incident for the last thirty years is additional evidence in his favor. Even with the recommended surgery, there is a large risk that Theriot will continue to be disabled. He will never again, even with the best possible result from surgery, be able to return to his former employment as a laborer.
On appellate review, the trial court’s factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings unless clearly wrong.
Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300,301 (La.1979). Furthermore,
If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that there is a causal connection between the two, so long as the medical evidence establishes a reasonable possibility of such a connection.
Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981). An injured worker is entitled to compensation even if some preexisting condition contributed to the disabling consequences of an on-the-job injury. Allor v. Belden Corp., supra.
AMOUNT OF COMPENSATION
The day of trial the parties stipulated that Theriot’s correct compensation rate is $146.66 per week, and this is the amount awarded by the trial judge until further orders of the court. National Union and Aquatron now complain that “the trial court erred in awarding Mr. Theriot compensation benefits in light of the fact that Mr. Theriot is working and continues to work”[1] and argue that Theriot’s only compensation should be for supplemental earnings. Theriot argues, in response, that National Union and Aquatron should be bound by their stipulation. We agree with Theriot.
Because of the stipulation, we have no evidence before us of Theriot’s pre-injury wages and cannot calculate whether or not the $146.66 represents compensation for temporary total disability under La.R.S. 23:1221(1); permanent total disability under La.R.S. 23:1221(2); or supplemental earnings benefits under R.S. 23:1221(3). The cases cited by National Union and Aquatron in their brief are inapposite in that none of them involves a stipulation of damages by the parties.
We hold that the stipulation of the parties with regard to quantum is binding. In the case of City of Lake Charles v. *560 Dave’s Swedish Spa, 441 So.2d 50 (La.App. 3rd Cir.1983), writ den. 444 So.2d 120 (1984), involving collection of city sales taxes, the parties stipulated that “if judgment were rendered in favor of the City, the sum of $1,179.18 would be the correct assessment of taxes, penalties and attorney’s fees ...” At 52. The defendant complained on appeal that the trial court erred in awarding this sum, but the appellate court held that the stipulation was binding on defendant. See Western Surety Co. v. Avoyelles Farmers Co-op., 277 So.2d 627 (La. 1972), on rehearing (1973). We also believe that since the record is silent with regard to Theriot’s earnings we cannot find that the trial court was clearly wrong in its award. Luneau v. Hanover Ins. Co., 478 So.2d 752 (La.App. 3rd Cir.1985).
THE INTERVENTION
Weigand represented Theriot at the trial but not in this appeal. He has intervened for his fee and the costs he claims to have expended on Theriot’s behalf. This intervention requires an evidentiary hearing, and we remand for that purpose.
The judgment in favor of Harold Theriot is affirmed in all respects. National Union Fire Insurance Company and Aquatron International, Inc. must pay all costs of this appeal.
AFFIRMED BUT REMANDED.

. Theriot and his wife are now taking care of watching the yard at Aluminum Boats in exchange for room and board and $.95 per hour, twenty-four hours a day and seven days a week. They live in a fourteen-foot trailer, and they get $160.00 per week for 168 hours’ work. They take turns watching the yard, she during the day while he sleeps and he at night. He has no other income and no unemployment benefits. He is paid by check made payable to him alone, but the check is for both him and his wife.